Fredrick Edward ASCHBACHER,
Appellant,

v.

The STATE of Texas, Appellee.

No. 04–99–00406–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 8, 2001.

534

Paul J. Goeke, San Antonio, for appellant.

Scott Roberts, Assistant Criminal District Attorney, San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, KAREN ANGELINI, Justices.

Opinion by KAREN ANGELINI, Justice.

Fredrick Edward Aschbacher was convicted of murder and sentenced to fifty-five years confinement. He appeals his conviction in five issues. We affirm.

### Factual and Procedural Background

Aschbacher suffered from a delusional disorder. Because of his disorder, he developed a belief that Harold Leifeste was having an affair with his wife. Aschbacher also believed that Leifeste was the head of security at United Services Automobile Association and that Leifeste was monitoring his activities for the purposes of having him killed. Aschbacher feared alerting the police because of his belief that Leifeste had contacts within local law enforcement. There was, in fact, no basis for Aschbacher's delusional beliefs concerning Leifeste.

Aschbacher wrote threatening letters to Leifeste. After he was told to stay away from Leifeste, Aschbacher bought a pistol and designed a plan to kill Leifeste. In

accordance with his plan, Aschbacher darkened his face and hid in the bushes outside Leifeste's home. As Leifeste left his house, Aschbacher shot him more than twenty times, killing him. Aschbacher then threw the gun onto Leifeste's roof, raised his hands over his head, and admitted to a witness that he shot Leifeste. Aschbacher fled the scene. However, once the police located him, they apprehended him peaceably. After he was arrested, Aschbacher made a statement to the police, admitting his guilt.

A jury found Aschbacher guilty of murder and the trial court sentenced him to fifty-five years confinement and assessed a $10,000 fine. Aschbacher appeals his conviction in five issues. Specifically, he asserts: (1) the evidence is factually insufficient to support the jury's guilty finding; (2) the trial court erred in sustaining the State's objection to his attempt to explain the circumstances regarding the hiring of one psychiatrist; (3) the trial court erred in failing to comply with Texas Code of Criminal Procedure, article 46.03; (4) the trial court erred in commenting upon the weight of the evidence; and (5) during the punishment phase, the trial court erred in overruling his objection to the prosecutor's argument.

## Factual Sufficiency

In his first issue, Aschbacher challenges the factual sufficiency of the evidence supporting the jury's guilty finding. Essentially, he claims that the jury's rejection of his affirmative defense of insanity was so against the great weight and preponderance of the evidence as to be manifestly unjust and unfair.

■ We review the factual sufficiency of evidence supporting an affirmative defense to determine whether, after considering all the evidence relevant to the issue, the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Meraz v. State*, 785 S.W.2d 146, 155 (Tex.Crim.App.1990).

■ To establish an insanity defense, the defendant must prove by a preponderance of the evidence that, at the time of the offense, he, as a result of severe mental disease or defect, did not know that his conduct was wrong. TEX. PENAL CODE ANN. § 8.01 (Vernon 1994); *Torres v. State*, 976 S.W.2d 345, 347 (Tex.App.—Corpus Christi 1998, no pet.). The issue of insanity is not strictly a medical one. *Graham v. State*, 566 S.W.2d 941, 943 (Tex.Crim. App.1978). "[E]xpert witnesses, although capable of giving testimony that may aid the jury in its determination of the ultimate issue, are not capable of dictating determination of that issue." *Id.* at 949. In fact, the jury may weigh other factors in assessing the issue of insanity. Specifically, a fact finder may consider the person's demeanor before and after the offense, any attempts to evade police or to conceal incriminating evidence, a person's expressions of regret or fear of the consequences of his or her actions, and possible motives for the offense. *Torres*, 976 S.W.2d at 347–48 (citing *Schuessler v. State*, 719 S.W.2d 320, 329 (Tex.Crim.App. 1986, en banc), *overruled on other grounds, Meraz*, 785 S.W.2d at 155, *Murray v. State*, 147 Tex.Crim. 474, 182 S.W.2d 475, 477 (1944), and *Graham*, 566 S.W.2d at 952). Similarly, surrendering to the police and confessing to the crime may be indications of a realization that the person knew the charged conduct was wrong. *Plough v. State*, 725 S.W.2d 494, 500 (Tex. App.—Corpus Christi 1987, no pet.).

In support of his insanity defense, Aschbacher presented the following evidence. First, Zane Aschbacher, Aschbacher's brother, testified for the defense. He explained that he noticed a change in his brother's personality beginning in October

of 1996. According to Zane, Aschbacher began to take very little interest in his family and was dissatisfied with his job. Zane discussed Aschbacher's belief that his wife was having an affair with Leifeste, claiming that he was skeptical regarding its truth. Zane stated that it was clear to him that Aschbacher was not well and that he recommended to Aschbacher that he seek help.

In addition, three psychiatrists testified on Aschbacher's behalf. The first to testify was Dr. John Sparks, Medical Director for Correctional Health Care Services. Dr. Sparks conducted a competency examination on Aschbacher. During the exam, Aschbacher was coherent, but disorganized, and extremely emotional at times. Based upon this exam, Dr. Sparks diagnosed Aschbacher to be suffering from a severe delusional disorder and was of the opinion that Aschbacher was not competent to stand trial. Although Dr. Sparks was not ordered by the court to conduct a sanity evaluation on Aschbacher, based upon his competency evaluation, Dr. Sparks developed an opinion about Aschbacher's mental state at the time of the shooting. Specifically, Dr. Sparks concluded:

> [Aschbacher] was suffering from a severe mental disease, a delusional disorder at the time of the incident with which he's charged.

> And I've talked to him several times since the initial interview. I have found him, too, without variation, tells me each time that he believes he did the right thing. And I believe he thinks he did the right thing. Therefore, it is my opinion that he was insane at the time.

Dr. Cesar Garcia also testified regarding Aschbacher's mental state. Dr. Garcia conducted a sanity evaluation on Asch-

bacher. Dr. Garcia diagnosed Aschbacher to be suffering from a severe delusional disorder and determined that, at the time of the charged conduct, Aschbacher did not believe that his conduct was wrong.

Dr. Michael Arambula testified on Aschbacher's behalf. Dr. Arambula met with Aschbacher, as well as members of Aschbacher's family, and reviewed Aschbacher's record in determining whether he suffered from a "psychiatric illness and whether in some way that psychiatric illness was related to the crime that [he] was charged with." Dr. Arambula determined Aschbacher had a delusional disorder and that "his thinking was psychotic." According to Dr. Arambula, "based upon [Aschbacher's] delusional beliefs, he believed his conduct was right."

Dr. Richard Coons, the State's witness,[1] similarly concluded that Aschbacher suffered from a severe mental disease. However, Dr. Coons determined that the disease did not prevent Aschbacher from knowing his conduct was wrong. Dr. Coons' conclusion was based on several factors. Particularly, Dr. Coons testified that Aschbacher told him that he expected to be arrested, tried, and convicted of the crime. Dr. Coons acknowledged that Aschbacher believed his actions were justified. According to Dr. Coons, the fact that Aschbacher knew he would be convicted and punished for his actions indicates he clearly understood his conduct was wrong, even though he may have felt his actions were justified.

Although the consensus among Aschbacher's experts was that he was unable to appreciate the wrongfulness of his conduct, Dr. Coons, the State's expert, concluded otherwise. According to Dr. Coons, Aschbacher understood the legal consequences

---

**1.** Although Dr. Coons was the State's witness, the defense called him "in the middle of [its] case-in-chief to avoid having him be the last witness in rebuttal."

of his actions. And, although his conduct before the murder was somewhat strange, his actions during and immediately following the killing indicate Aschbacher knew his conduct was wrong. *See Torres*, 976 S.W.2d at 347–48. Specifically, Aschbacher blackened his face and wore a hat in an attempt to conceal his identity. He attempted to discard the murder weapon by throwing the gun onto Leifeste's roof. As he left the murder scene, Aschbacher put his hands into the air and admitted to one witness to the shooting that he shot Leifeste. *See Plough*, 725 S.W.2d at 500. And later, he confessed that he killed Leifeste in a statement to the police. *Id.*

■ The record, in this case, clearly shows controverting evidence as to whether Aschbacher knew the difference between right and wrong. *See Torres*, 976 S.W.2d at 348; *Plough*, 725 S.W.2d at 499. The jury, therefore, reasonably could have resolved the conflicting evidence regarding legal insanity against Aschbacher. The jury's decision is not so against the great weight and preponderance of the evidence that it is manifestly unjust. Aschbacher's first issue is overruled.

### Evidentiary Error

Aschbacher claims in his second issue that the trial court erred by sustaining the State's objection to his attempt to introduce evidence regarding the hiring of Dr. Coons. Aschbacher first complained about the circumstances of Dr. Coons' hiring during an *in camera* hearing. At the hearing, defense counsel explained to the court that Leifeste, the victim, and a retired/visiting judge were friends. The judge is the father of the assistant district attorney responsible for prosecuting this case. According to defense counsel, because of this friendship, the judge's "influ-

ential" position, and his daughter's role in the case, the district attorney's office was biased and could not fairly prosecute this case. Defense counsel then went on to suggest that the State hired Dr. Coons because of this bias and that Dr. Coons' determination that Aschbacher was legally sane was pre-determined.[2]

Dr. Coons had not made a report regarding his conclusion. Accordingly, defense counsel asked the trial court "to direct [the State] to follow the Code of Criminal Procedure and to stop telling and stop trying to hide evidence in the form of the psychiatric analysis." The State and the defense then agreed to share with each other their experts' conclusions.

■ We first note that Aschbacher's complaint during the hearing was that Dr. Coons failed to make a report. To preserve error for appellate review, the record must show a complaint was made to the trial court, stating the grounds with sufficient specificity to make the trial court aware of the complaint, unless the grounds are apparent from the context. TEX.R.APP. P. 33.1(a)(1)(A). During the hearing, although Aschbacher described the circumstance surrounding Dr. Coons' hiring, he complained only of Dr. Coons' failure to make a report of his conclusions. Accordingly, at the hearing, Aschbacher failed to preserve for appellate review his complaint that the trial court improperly sustained the State's objection to testimony regarding the hiring of Dr. Coons.

In his issue, Aschbacher points to an exchange between defense counsel and Dr. Coons. That exchange is used to support his statement that "Dr. Coons has become the latest 'last bastion' for prosecutors seeking psychiatric support for their posi-

---

**2.** Defense counsel stated, at the hearing, that he was considering filing a motion to recuse the District Attorney's Office because of this alleged bias. He did not do so.

tion." The State made no objection to any of Dr. Coons' responses during the colloquy presented.

The State, however, cites to another exchange between defense counsel and Dr. Sparks, wherein defense counsel attempted to elicit testimony regarding the perceived conflict. That exchange is as follows:

Q: Have I—well, let me—do you know the relationship between a man who was killed here and the father of the prosecutor that she was talking to you about, Melissa Barlow Fischer?

A: I didn't know that until very recently.

Q: Do you think that because a person—because the victim of a crime may have a close relationship with a politically powerful person?

[STATE]: Objection, relevance Judge.

[DEFENSE COUNSEL]: This door has been opened as widely as one can.

THE COURT: And as wide as that may be, it ain't wide enough. I sustain the objection.

[DEFENSE COUNSEL]: Okay.

■ We assume this is the objection and ruling Aschbacher complains of in his second issue. Error may not be predicated upon a ruling which excludes evidence unless the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which questions were asked. *Warner v. State*, 969 S.W.2d 1, 2 (Tex.Crim.App. 1998). An offer of proof may be in question-and-answer form, or it may be in the form of a concise statement by counsel. *Id.; Love v. State*, 861 S.W.2d 899, 901 (Tex.Crim.App.1993).

■ Assuming the above-mentioned exchange and the State's objection therein is what Aschbacher complains of, he did not make an adequate offer of proof, nor did his counsel make a concise statement that would allow the trial court to determine whether the evidence he intended to offer was relevant. Therefore, Aschbacher has waived his complaint. His second issue is overruled.

### Texas Code of Criminal Procedure, Article 46.03

■ In his third issue, Aschbacher asserts the trial court fundamentally erred by failing to comply with Code of Criminal Procedure, article 46.03, section 3(c). Specifically, he asserts the trial court's order appointing Dr. Sparks to perform an insanity evaluation provides the wrong definition of "legal insanity." Aschbacher, however, has not preserved this error for appellate review. He made no objection, either pretrial or during trial, to the order. TEX.R.APP. P. 33.1(a). Accordingly, Aschbacher's third issue is waived.

### Trial Court Comment

Aschbacher claims in his fourth issue on appeal that the trial court erred in commenting on the weight of the evidence. Code of Criminal Procedure, article 38.05 provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

■ Generally, "a correct statement of the law by the trial court, even during trial, is not reversible" as a comment on the weight of the evidence. *Powers v. State*, 737 S.W.2d 53, 54 (Tex.App.— San Antonio 1987, pet. ref'd). A trial

court's comment results in reversible error only when it is either reasonably calculated to benefit the State or to prejudice the defendant's right to a fair and impartial trial. *Sharpe v. State,* 648 S.W.2d 705, 706 (Tex.Crim.App.1983). An instruction by the trial judge to the jury to disregard any comments made by him or her is generally sufficient to cure any error arising from his or her statements. *Marks v. State,* 617 S.W.2d 250, 252 (Tex.Crim.App.1981); *Hicks v. State,* 901 S.W.2d 614, 617 (Tex. App.—San Antonio 1995, pet. ref'd).

During trial, Aschbacher's defense counsel questioned the experts on whether Aschbacher knew his conduct was wrong. In that regard, the trial judge made the following remarks to the jury:

> I want to say something to the jury. There are terms that we use in the law that have legal definitions and when we get around to the Courts's [sic] Charge, I will give you definitions of those words. There are other words that will not be defined in the Courts's [sic] Charge and as to those words, you are to understand—to use those words as they are in common every day speech. Wrong is one of those words. I will not give you a legal definition of it. It will— so you will decide what is meant by the word "wrong" when you are dealing with the question of whether the insanity defense has been established in this case.
>
> The definitions given by the experts are their definitions. The definition you are to use is what the word means in common ordinary speech.

Later, outside the jury's presence, the trial court stated:

> Let me say, for the record, the reason I felt called upon to do that. The last two expert witnesses had each given their definition of the word "wrong" and maybe they're right; and although, I'm not sure they both could

be, and I wanted the jury to understand that the word is given its meaning in ordinary parlance.

■ The trial court's comment is a correct statement of the law. *See Powers,* 737 S.W.2d at 54. "When words are not specially defined by the Legislature, they are to be understood as ordinary usage allows, and jurors may freely read the statutory language to have any meaning which is acceptable in common speech." *Medford v. State,* 13 S.W.3d 769, 771–72 (Tex.Crim.App.2000); *Vernon v. State,* 841 S.W.2d 407, 409 (Tex.Crim.App.1992). The term "wrong" is not defined in the Penal Code. *See* TEX. PEN.CODE ANN. §§ 1.07, 8.01 (Vernon 1994). The jury, therefore, was to interpret the word according to its common meaning. The trial court, here, was simply explaining the applicable rules and the jury's role in the case.

We further note that the trial judge instructed the jury as follows:

> You must disregard any comment or statement made by the Court during the trial or in these instructions which may seem to indicate an opinion with respect to any fact, item of evidence or verdict to be reached in this case. No such indication is intended.

In doing so, the trial judge cured any error he may have committed in his statements. *Marks,* 617 S.W.2d at 252; *Hicks,* 901 S.W.2d at 617. Aschbacher's fourth issue is overruled.

### Jury Argument

■ In his final issue, Aschbacher claims the trial court erred in overruling . his objection to the State's argument because it was not supported by the evidence adduced at trial. Proper jury argument falls within one of four general areas: (1) summation of the evidence; (2) reasonable

deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex.Crim.App. 1999); *Vasquez v. State*, 2 S.W.3d 355, 360 (Tex.App.—San Antonio 1999, pet. filed). We consider challenged jury argument in its context and grant counsel wide latitude in drawing inferences from the evidence. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim.App.1988).

During closing arguments on punishment, Aschbacher's defense counsel made the following statements:

> We live in a culture of fear now. You people are afraid. Out here, we are afraid. They're afraid. We live in a culture of fear because of the kind of random violence that took that family's loved one's life. We live in a culture of fear because of that. And we have a criminal justice system that is getting twisted up with that and there is not much fairness left in it. . . .

> And I—I tell you that because I'll remind you about something in the very beginning of this case, a man asked this Judge what would happen if the jury returned a verdict of not guilty by reason of insanity. He wasn't allowed to tell him. The legislature says we can't tell you. Okay? And that is designed to encourage your fear that maybe a person who is found not guilty by reason of insanity goes free. And they don't. . . .

Aschbacher complains about the following statements made by the State during closing arguments:

> [STATE]: Please the Court, defense counsel. You all don't know Anita Weber. She was a woman that was—

> [DEFENSE]: Object to the relevance of argument not based on evidence, Judge.

> THE COURT: Overruled.

> [DEFENSE]: Running objection and I won't interrupt her any more.

> THE COURT: Yes.

> [STATE]: After that, she got out of the hospital. She was found not guilty by reason of insanity, she got out of the hospital. And guess what? She killed another boyfriend. And we had another trial. And that jury didn't get to hear about what would happen if she got out; if she got found not guilty by reason of insanity. Do you think that the State wants you all to know that? Of course we do, ladies and gentlemen.

Aschbacher argues that the prosecutor's statements "injected new and harmful facts into the case regarding a different defendant having been found not guilty by reason of insanity, only to be released to kill again." Accordingly, he asserts that the statements do not fall within any of the permissible areas of jury argument. We disagree.

▇▇▇▇ Generally, the principal purpose of jury argument is to assist the jury in analyzing the evidence and in arriving at a just and reasonable conclusion based only on the evidence. *Dickinson v. State*, 685 S.W.2d 320, 322 (Tex.Crim.App.1984). However, jury argument made in answer to opposing counsel's argument is permissible. *See Wilson v. State*, 938 S.W.2d 57, 59 (Tex.Crim.App.1996); *Goff v. State*, 931 S.W.2d 537, 547–48 (Tex.Crim.App.1996). The "invited argument" rule permits prosecutorial argument outside the record in response to defense argument which goes outside the record. *Johnson v. State*, 611 S.W.2d 649, 650 (Tex.Crim.App. [Panel Op.] 1981); *Tucker v. State*, 15 S.W.3d 229, 237 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd). A prosecutor's comments may not, however, stray beyond the scope of the invitation. *See Johnson*, 611 S.W.2d at 650; *Tucker*, 15 S.W.3d at 237.

In this case, the State's comments were clearly made in response to defense counsel's argument that the Legislature purposefully keeps information from the jury regarding what happens to a person found not guilty by reason of insanity. Specifically, defense counsel suggested that the State kept this information from the jury to "encourage [their] fear that maybe a person who is found not guilty by reason of insanity goes free." By raising the issue of what happens once a jury makes such a finding, defense counsel invited the State's comments regarding what has happened in the past. The State's comments were proper jury argument. Aschbacher's fifth issue is overruled.

### Conclusion

We overrule all five of Aschbacher's issues and affirm the trial court's judgment.