# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00029-CR

**Christopher Dewayne Marshall, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE CRIMINAL DISTRICT COURT NO. 4 OF DALLAS COUNTY
### NO. F-0247983-QK, HONORABLE JOHN COLEMAN CREUZOT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Christopher Dewayne Marshall was charged with the offense of aggravated assault with a deadly weapon. Marshall waived his right to a jury trial and entered a plea of not guilty by reason of insanity. After hearing the evidence, the trial court found Marshall guilty of the charged offense and assessed punishment at three years' confinement. Marshall appeals by one issue, arguing that the trial court's rejection of his insanity defense was against the great weight and preponderance of the evidence. We will overrule his issue and affirm the judgment of conviction.

## BACKGROUND

According to the testimony and evidence presented at trial, Marshall was eighteen and homeless at the time of the assault. Bennie Warren, the complainant, befriended Marshall and his

girlfriend and allowed them to stay at his apartment on occasion during the month of January 2002. After the last occasion during which Marshall stayed at Warren's residence, Warren discovered that he was missing his cell phone and some clothing. He believed that Marshall took those items. On February 9, 2002, Warren spotted Marshall in front of the downtown library in Dallas. Warren confronted Marshall, asking about the missing items, and Marshall became angry. Marshall then stabbed Warren at least once in the abdomen and ran off. Warren was transported to a hospital where he underwent surgery; the stab wound had gone through his stomach and into his liver. Later, after Warren was released from the hospital, he ran into an acquaintance who told him that Marshall had bragged about the stabbing the day after the assault.

These facts were undisputed by Marshall. He alleged, however, that he was not guilty of the assault by reason of insanity. In support of his defense, he presented two witnesses: Cassie Stanford, his former juvenile probation officer from Oklahoma, and Dr. Randy J. Noblitt, a clinical psychologist who examined Marshall and his medical and juvenile records. After considering the evidence, the trial court rejected Marshall's insanity defense and convicted him of the charged offense. Marshall now appeals that judgment of conviction, arguing that the trial court's rejection of his insanity defense is against the great weight and preponderance of the evidence.

## DISCUSSION

**Affirmative Defense**

Insanity is an affirmative defense. Tex. Pen. Code Ann. § 8.01 (West 2003). To establish the insanity defense, the defendant must prove, by a preponderance of the evidence, that

2

at the time of the offense, as a result of severe mental disease or defect, he did not know that his conduct was wrong. *Id.* The issue is not strictly a medical one, but one that involves ethical and legal considerations as well. *Graham v. State*, 566 S.W.2d 941, 948 (Tex. Crim. App. 1978). The purpose of the insanity defense is to determine whether the defendant should be held responsible for the crime, or whether his mental condition is such that he is unable to distinguish right from wrong and does not know the nature and consequences of his actions and should therefore be excused from responsibility. *Id.* at 948-49.

Expert witnesses, although capable of aiding the trier of fact in determining the issue of insanity, do not dictate the results. *Id.* at 949. The ultimate issue of criminal responsibility is beyond the province of an expert witness; otherwise the issue "would be tried in hospitals rather than in courts." *Id.* While expert testimony might be helpful to the trier of fact, the final determination of insanity is outside the purview of medical experts and should be left to the discretion of the trier of fact. *Id.* at 952.

It is not necessary for the State to present expert medical testimony that a defendant is sane in order to counter defense experts. *Id.* at 950. The trier of fact may accept or reject in whole or in part the testimony of expert medical witnesses. *Id.* at 950-51. Rarely will the trier of fact's determination regarding an insanity defense be overturned on appeal. *Bigby v. State*, 892 S.W.2d 864, 878 (Tex. Crim. App. 1994); *Graham*, 566 S.W.2d at 953.

**Standard of Review**

When reviewing the factual sufficiency of the evidence concerning an affirmative defense, we consider all the evidence relevant to the issue to determine whether the judgment is so

3

against the great weight and preponderance of the evidence that it is manifestly unjust. *Bigby*, 892 S.W.2d at 875; *Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990). The issue of insanity lies exclusively within the province of the fact finder, not only as to the credibility of the witnesses and weight of the evidence, but as to the limits of the defense itself. *Bigby*, 892 S.W.2d at 878; *Graham*, 566 S.W.2d at 952.

**Analysis**

Cassie Stafford, Marshall's juvenile probation officer from Oklahoma, testified about Marshall's history and background. She had been Marshall's probation officer since he was twelve years old. She recounted that Marshall had a history of suffering from mental illness, and at times, it made him violent. Because of his illness, Marshall was under medical care and psychiatric medications while he was on juvenile probation. During his six years in the Oklahoma juvenile system, Marshall received medical treatment from at least six different mental institutions. On occasion, Marshall would either refuse to take his medications or convince his mental health professionals to allow him to go off his medication. When this occurred, Marshall would exhibit bizarre behavior, including assaultive conduct. Stafford opined that Marshall would always require assistance in "dealing with some issues."

Dr. James Randall Noblitt, a licensed clinical psychologist, testified that he reviewed Marshall's medical, juvenile, and Dallas County jail records. He also evaluated Marshall and administered two psychological tests to him. In a report, Dr. Noblitt concluded that Marshall "experiences dissociative states during which he is unable to distinguish right from wrong" and that "he was legally insane at the time the offense was committed." He further testified that Marshall

4

"was in a dissociative state at the time the alleged incident occurred and in that dissociative state he did not know how to distinguish right from wrong . . . . [H]e experiences episodes of dissociation which means that he has lapses in memory and alterations in identity basically . . . ." According to Dr. Noblitt, at the time of the stabbing, Marshall was likely in a "hypnotic" state or alternatively, he could have switched to a different personality during the offense. Part of the basis for Dr. Noblitt's conclusion was that Marshall had no recollection of the stabbing.

During Dr. Noblitt's examination, the trial court summarized the contents of the police report for the doctor and asked whether this information would have had a bearing on his opinion. Dr. Noblitt admitted that it would, especially if there had been a short period of time between the confrontation and the stabbing. After Dr. Noblitt acknowledged that an interview with Warren would be helpful to him, the trial court took a recess to afford Dr. Noblitt the opportunity to speak with Warren. After the recess Dr. Noblitt testified that if Warren's assertions, that Marshall stabbed him immediately after the confrontation and bragged about the incident the following day, were true, the stabbing most likely did not result from a dissociative episode because Marshall's behavior was "too complex."

Following the defense's presentation of evidence, Warren testified for the State,[1] recounting what he remembered of the stabbing incident. He recalled that Marshall did not appear

---

[1] At the beginning of the trial, the State presented three exhibits and rested, reserving the right to call Warren as a witness after the defense presented its evidence.

5

to "blank out" or dissociate himself from the situation prior to the stabbing. In fact, Marshall was engaged in the argument just before the stabbing, according to Warren.

In sum, Dr. Noblitt's testimony was conflicting as to whether Marshall knew the difference between right and wrong at the time of the assault. Although he initially opined that Marshall could not distinguish right from wrong at the time of the stabbing, he acknowledged that if Warren's version of the facts were true, his conclusion would be different. The trial court, as the sole fact finder, was free to accept or reject, in whole or in part, Dr. Noblitt's opinion testimony and Warren's account of the facts. *Graham*, 566 S.W.2d at 950-51. The court also could have considered other factors in assessing the validity of the defense. *Aschbacher v. State*, 61 S.W.3d 532, 535 (Tex. App.—San Antonio 2001, pet. ref'd). The court could consider, for example, Marshall's demeanor both before and after the assault. *Schuessler v. State*, 719 S.W.2d 320, 329-30 (Tex. Crim. App. 1986), *overruled on other grounds, Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990); *Aschbacher*, 61 S.W.3d at 535. Thus, the trial court was entitled to assess Marshall's actions after the incident, such as Marshall's flight from the scene and Warren's testimony that Marshall bragged about the stabbing the day after it occurred, and could have concluded that Marshall knew what he was doing when he stabbed Warren. Ultimately, the issue of sanity is a question for the finder of fact, who may believe or disbelieve experts or lay witnesses as it chooses. *Wade v. State*, 630 S.W.2d 418, 419 (Tex. App.—Houston [14th Dist.] 1982, no pet.). Based on the evidence and affording appropriate deference to the trial court's determination of the facts, we conclude that the court's rejection of the insanity defense was not so against the great

6

weight and preponderance of the evidence as to be manifestly unjust. We overrule Marshall's sole issue on appeal and affirm the judgment of conviction.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: January 23, 2004

Do Not Publish