NUMBER
13-10-00029-CR

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI
- EDINBURG

                                                                     


 

JULIO MADRIGAL JR.,                                       Appellant,

 

v.

 

THE STATE OF TEXAS,                                   
Appellee.

                                                                     


 

On appeal from the 24th
District Court

of Victoria County,
Texas.

                                                           
          

 

MEMORANDUM OPINION

 

       Before
Chief Justice Valdez and Justices Rodriguez, and Benavides

                      Memorandum
Opinion by Justice Benavides

 

            A
jury convicted appellant, Julio Madrigal Jr., of aggravated assault with a
deadly weapon, and the court sentenced him to sixteen years’ confinement in the
Texas Department of Criminal Justice—Institutional Division.  See Tex. Penal Code Ann. § 22.02(a)(2)
(West 2009).   By four issues, with several sub-issues, Madrigal contends that
the trial court erred by:  (1) infringing upon his Fifth Amendment right to not
act as a witness against himself; (2) admitting into evidence a knife allegedly
used by Madrigal without proper authentication; (3) failing to submit an
instruction on the affirmative defense of “defense of third persons” to the
jury; and that (4) the judgment was not supported by sufficient evidence.  We
affirm.

I.  Background

            On
July 4, 2008, Madrigal was involved in an altercation with Jose Cervantes at
Club Palenke in Victoria, Texas.  Both parties admitted to having many drinks
and being intoxicated.  Earlier in the evening, Madrigal noticed that his
ex-girlfriend, Melanie Luis, was also at the club with several friends,
including Cervantes.  A separate altercation occurred in the bathroom of the
club between Madrigal and Reynaldo Hernandez, Cervantes’s brother, but it was
calmed down when security was called to the bathroom, and the two parties
“pretty much ignored each other” until the bar was closing at 2:00 a.m. 
According to Madrigal’s testimony, Cervantes’s party was leaving the club and
Luis stopped at Madrigal’s table to discuss an issue concerning their shared
child.  Madrigal testified that Cervantes instructed Luis that the group would
leave her behind if she did not leave right then, to which Madrigal responded,
“Hey, I’m talking to her.”  Madrigal testified that at that time, Cervantes
reached across the table and slapped Madrigal in the face causing him to fall
backwards.  Other testimony indicated that Madrigal in fact approached Luis as
she and Cervantes were leaving the club and blocked their exit.  Security
escorted Madrigal out the back door of the club while Cervantes and the rest of
his party left through the front door of the club.  Testimony differed as to
how Cervantes and Madrigal ultimately became involved in a fight, but it was
undisputed that Madrigal took a knife from his pocket and lunged at Cervantes
with the knife, and that Cervantes brutally beat Madrigal about the face with
his fists until Madrigal “wasn’t moving any[]more.”  Cervantes testified that
he left the scene after the fight because:

I was scared
because like—I figured he didn’t hurt me and I hurt him.  And he came at me, so
it really wasn’t my fault, me doing anything to him, because he came at me. 
[I] didn’t want to get in trouble with the law[,] so I just decided to leave.

 

After
Cervantes left in his pick-up truck, he noticed that he was bleeding and had
been stabbed several times.  He began losing consciousness and ultimately
passed out behind the wheel.  Cervantes was transported by ambulance to
Citizens Medical Center in Victoria where he was treated for multiple stab
wounds to the left side of his body.  Cervantes was not charged with a crime. 
Madrigal was found guilty of aggravated assault with a deadly weapon, and this
appeal followed.

II. 
Establishing Self-Defense

By
his first issue, Madrigal contends that his Fifth Amendment right to not
testify was violated because the trial court “forced” him onto the witness
stand by (1) excluding Luis’s testimony concerning Madrigal’s self-defense
claim and (2) making improper comments to the jury, thereby making it necessary
for Madrigal to testify in order to establish his theory of self-defense.  His
argument is based primarily on the following exchange:

Q:        [Counsel
for Madrigal] Was Mr. Madrigal, did he show any expression, knowing that Mr.
Cervantes was coming toward him?

 

A:        [Luis]
Yes.

 

Q:        What
did he do?

 

A:        That’s
why he brushed past me.

 

Q:        Okay. 
And in seeing this coming toward him, was he trying to defend himself?

 

[Counsel for
the State]:       Your Honor, I object.  That calls for speculation on the part
of this witness.

 

[Counsel for
Madrigal]:       Judge, it doesn’t, okay.  This witness can testify as to what
she saw, okay, and the events leading up to it.

 

THE COURT:                      But
what would his motivation be would be something that’s solely within his
province, so I’ll sustain the objection.

 

Following this
exchange, the jury was asked to return to the jury room, and counsel for
Madrigal moved for a mistrial based on the judge’s comment that “[Madrigal’s]
motivation [] would be something that’s solely within his province,” contending
that,

at this point in time[,] I believe
that that comment by the [c]ourt is going to lend an inference to the jury that
is going to be very, very detrimental to my defense of him and putting forth
the self-defense theory because I believe that they’re going to take from that
comment if he doesn’t testify, they can’t consider self-defense.

 

The court
denied the motion for mistrial, and offered to instruct the jury concerning its
ability to consider self-defense absent the defendant’s testimony.  After the
instruction was approved by the parties, the court brought the jury back into
the courtroom and instructed them as follows:

Ladies and
gentlemen, I’m going to give you an instruction.  I want you to listen
carefully to this instruction and then you will be guided by this instruction
for the remainder of the trial.

 

            In response to [the
State’s] objection, I pointed out that whether or not Mr. Madrigal intended to
defend himself was a mental condition that only Mr. Madrigal knew and I want to
tell you that Mr. Madrigal has a right not to testify.  But you can consider
the defense of self-defense under these conditions.  If, by other evidence,
which means by the witness or other photos or other witnesses, Mr. Madrigal can
demonstrate to you that he, Mr. Madrigal, abandoned the encounter, or clearly
communicated to Mr. Cervantes his intent to do so and reasonably believed that
he could not safely abandon the encounter and that Mr. Cervantes, once he knew
that Mr. Madrigal intended to abandon the encounter, nevertheless continued or
attempted to continue to use unlawful force against Mr. Madrigal.  Don’t you
love legalease. [sic]

 

Madrigal
additionally contends on appeal that the last sentence of the instruction,
“Don’t you love legale[]se[?],” “trivialized” and “rendered completely
meaningless” the court’s instruction.

 A. 
Admissibility of the Testimony

            First, Madrigal contends that the
trial court erred by excluding Luis’s testimony concerning Madrigal’s
self-defense claim.

We
review a trial court’s decision to admit or exclude evidence for an abuse of
discretion.  Green v. State, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996). 
Texas Rule of Evidence 602 provides that “[a] witness may not testify to a
matter unless evidence is introduced sufficient to support a finding that the
witness has personal knowledge of the matter.”  Tex.
R. Evid. 602.  Additionally, testimony that is based solely on
speculation and conjecture necessarily lacks probative value, and therefore
fails to meet the relevancy requirement of the rules of evidence.  Turro v.
State, 950 S.W.2d 390, 403 (Tex. App.—Fort Worth 1997, pet. ref’d) (citing Tex. R. Evid. 401).  Lay testimony
concerning the thought processes of others, however, is not always considered
speculative and should be admitted if the testimony is “(a) rationally based on
the perception of the witness and (b) helpful to a clear understanding of [the]
testimony or the determination of a fact in issue.”  Tex. R. Evid. 701; see Bigby v. State, 892 S.W.2d
864, 888 (Tex. Crim. App. 1994).  Crucially, rule 701's requirement that the
testimony be based on the witness's perception presumes that the witness meets
the personal-knowledge requirement of rule 602.  Turro, 950 S.W.2d at
403 (citing Bigby, 892 S.W.2d at 889).  

Here,
the witness, Luis, was asked a very specific question about Madrigal’s mental
state—whether he was intending only to defend himself or if he intended to also
act as, at least, a co-aggressor.  As a witness present at the time of the
incident, Luis was clearly permitted to testify as to what she observed.  See
Tex. R. Evid. 602.  However,
whether she had sufficient knowledge to know Madrigal’s internal thought processes—especially
while he was intoxicated—was not necessarily within her personal knowledge, and
therefore, the decision to admit or exclude the testimony was within the
discretion of the trial court.  See Green, 934 S.W.2d at 102.  Madrigal
does not point to any portion of the record indicating that Luis had special
knowledge of Madrigal’s thought processes or that she otherwise had personal
knowledge of his intentions.  See Tex.
R. App. P. 38.1(i) (requiring the appellant to give “a clear and concise
argument for the contentions made, with appropriate citations to authorities
and to the record”).  Therefore, we cannot conclude that the trial court abused
its discretion in excluding Luis’s objected-to testimony.

B.  The
Trial Court’s Comments

            Second,
Madrigal contends that the trial court erred by making inappropriate comments
in the presence of the jury.  Although he cites no authority for this
contention, we construe this argument as a contention that the trial court made
a comment in violation of article 38.05 of the Texas Code of Criminal Procedure
which provides that:

In ruling upon the admissibility of
evidence, the judge shall not discuss or comment upon the weight of the same or
its bearing in the case, but shall simply decide whether or not it is admissible;
nor shall he, at any stage of the proceeding previous to the return of the
verdict, make any remark calculated to convey to the jury his opinion of the
case.

 

Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979).  “To constitute
reversible error, the trial court's comment to the jury must be such that it is
reasonably calculated to benefit the State or to prejudice the rights of the
defendant.”  Becknell v. State, 720 S.W.2d 526, 531 (Tex. Crim. App.
1981).  Here, the trial court simply made a comment that he was sustaining the
State’s objection because Madrigal’s state of mind fell “solely within his
province.”  Because this statement had no bearing on what Madrigal’s actual
state of mind was, we conclude that this comment was not calculated to benefit
the State or to prejudice the rights of the defendant.  See id. 
Additionally, even if this statement was originally prejudicial, the trial
court dissolved any such prejudice by (1) giving a clear and comprehensive
instruction to the jury regarding the required proof for a self-defense claim;
(2) instructing the jury that his comment was not a comment on the evidence;
and (3) instructing the jury that it was required to apply the statutory law on
Madrigal’s claim of self-defense.  See Williams v. State, 937 S.W.2d
479, 490 (Tex. Crim. App. 1996) (noting that appellate courts assume that a
jury will follow instructions from the court); Aschbacher v. State, 61
S.W.3d 532, 539 (Tex. App.—Austin 2001, pet. ref’d) (citing Marks v. State,
617 S.W.2d 250, 252 (Tex. Crim. App. 1981)) (“An instruction by the trial judge
to the jury to disregard any comments made by him or her is generally
sufficient to cure any error arising from his or her statements.”).  Here,
Madrigal provides no basis for this Court to conclude that the jury did not
follow the instruction given to it by the trial court, and therefore, we find
no error.  See Aschbacher, 61 S.W.3d at 539. 

Madrigal
additionally contends that the judge’s comment to the jury at the end of the
his instruction—“Don’t you love legale[]se[?]”—rendered the instruction
meaningless.  We disagree because nothing in this comment instructs the jury to
disregard the previous, comprehensive instruction.  See Williams, 937
S.W.2d at 490.  Regardless, because Madrigal made no objection to the comment
at the time it was made, no error is preserved for review.  See Becknell,
720 S.W.2d at 532 (citing Sharp v. State, 707 S.W.2d 611, 619 (Tex.
Crim. App. 1986)).

C.  Fifth
Amendment Violation

            Third,
Madrigal contends that the combination of the trial court’s exclusion of Luis’s
testimony and its comments to the jury “prevented [Madrigal] from establishing
self-defense other than by waiving his Constitutional right to not testify” and
that this amounted to a violation of his Fifth Amendment right to not act as a
witness against himself.  See U.S.
Const. amend. V.  We disagree.

            As
we have discussed, neither of these actions by the trial court prejudiced
Madrigal or constituted error.  Madrigal provides no support for his argument
that the trial court should be required to admit otherwise inadmissible
evidence in order to preserve a defendant’s ability to not testify.  The Fifth
Amendment right to not testify is a protection that forces the State to prove
its case beyond a reasonable doubt without relying on the testimony of the
defendant.  See id.; cf. Carter v. Ky., 450 U.S. 288, 304 (1981)
(“Without question, the Fifth Amendment privilege and the presumption of
innocence are closely aligned.”).  This is not to say, however, that the rules
of evidence are no longer applicable when a defendant seeks to prove an
affirmative defense for which he has the initial burden.  See Zuniga v.
State, 144 S.W.3d 477, 482 (Tex. Crim. App. 2004) (noting that, for an
affirmative defense, the defendant carries the initial burden of proof).  In
other words, when the defendant seeks to prove an affirmative defense, he will
often find it necessary to waive his Fifth Amendment privilege in order to
establish that defense; the fact that his defense could not be established
without his testimony, however, does not mean that his testimony was
compelled.  See United States v. Haimowitz, 706 F.2d 1549, 1557 (11th
Cir. 1983) (noting that the defendant’s Fifth Amendment rights were not
violated because “he was never required to say or produce anything, and [there
was] no compulsion to speak, [despite the fact that there was] inherent
psychological pressure to respond at trial to unfavorable evidence”); Lavern
v. State, 48 S.W.3d 356, 360 (Tex. App.—Houston [14th Dist.] 2001, pet.
ref’d) (noting that self-defense is rarely raised where the defendant does not
testify).

            Moreover,
Madrigal did present his self-defense claim through the testimony of his other
witnesses, and therefore, we find his Fifth Amendment challenge to be wholly
unconvincing.  See Smith v. State, 676 S.W.2d 584, 587 (Tex. Crim. App.
1984) (noting that the defendant need not testify in order to establish the
basis for a claim of self-defense, and he will nevertheless be entitled to an
instruction on the affirmative defense if it is raised by the evidence).  Based
on the foregoing, we overrule Madrigal’s first issue in its entirety.

III.  The
Knife

            By
his second issue, Madrigal contends that the trial court erred by admitting
State’s Exhibit #28 (“the knife”) into evidence because it was not properly
authenticated.  Here again, we review the trial court’s ruling on the admission
of the evidence for an abuse of discretion.  Green, 934 S.W.2d at 102. 
Texas Rule of Evidence 901 requires that, as a precedent to admissibility, the
proponent must present evidence to sufficiently “support a finding that the
matter in question is what its proponent claims”—or in this case, that the
knife was in fact the knife found in the parking lot of the club.  See Tex. R. Evid. 901(a).  Detective
John Swenson of the Victoria Police Department testified about the chain of
custody of the knife and how he knew it to be the knife he found in the parking
lot:

Q:        [Counsel
for the State]  Did you actually collect the knife that you found in Club
Palenke that matched Melanie Luis’s description?

 

A:        [Detective
Swenson]  Yes, ma’am.

 

            . . . .

 

Q:        Do
you keep custody of whatever item you find until you place it into evidence at
the Victoria Police Department?

 

A:        Yes,
ma’am, it never leaves my custody.

 

. . . .

 

Q:        How
did you handle the knife when—after you found it, in order to maintain its
integrity and for it to possibly be tested for prints?

 

A:        The
first —the first thing we do is when we find—find the evidence would be to take
a photograph of it at the location.  Of course we take our measurements and, as
you saw, the photographs. 

 

. . . .

 

Q:        State’s
exhibit Number 3, the top photograph of the knife, is that how you found the
knife, with the blade open?

 

A:        Yes,
ma’am.

 

Q:        Do
you recognize State’s Exhibit Number 28?

 

A:        Yes,
ma’am.

 

Q:        How
do you recognize it?

 

A:        My
handwriting, my signature.

 

Q:        What
types of information do you put on a piece of evidence to make sure that you’ll
be able to identify it later and associate it with a particular offense report
and case?

 

A:        The
first thing would be the actual case number that’s assigned to the incident. 
Also, date and time when the property was located.  Also, the employee’s name
and their employee number, which mine is John Swenson 6390.  The[n] give a
description of what it is.  In this case it’s a black folding knife with “Jeep”
written on the side of it.

 

The officer
testified as to how he remembered finding the knife and testified to the
characteristics of the knife that ensured him he was looking at the same knife
that he discovered in the parking lot of the club, including the distinct
“Jeep” logo written on the side of the knife.  Based on his testimony, we
conclude that the knife was properly authenticated, and the trial court did not
err by admitting it into evidence.  See Tex.
R. Evid. 901(b) (allowing evidence to be authenticated,
among other ways, by testimony of a witness with knowledge or by the
identification of distinctive characteristics of the evidence, including
“appearance, contents, substance, internal patterns, or other distinctive
characteristics, taken in conjunction with circumstances”); see also
Angleton v. State, 971 S.W.2d 65, 68 (Tex. Crim. App. 1998).

            Under
his second issue, Madrigal additionally contends that the knife was
inadmissible “[b]ecause there was no physical evidence to link Julio to the
knife . . . .”  As the State points out, this appears to be
an argument that the evidence was not relevant under Texas Rule of Evidence
403.  See Tex. R. Evid.
403.  However, insofar as Madrigal is making such a relevancy argument, his
issue is not preserved for our review because he did not object to the
admission of the knife on this basis, nor has he adequately briefed such an
argument.  See Tex. R. App. P.
33.1 (requiring that, to preserve error for appeal, an appellant must timely
object, state the grounds for the objection with sufficient specificity and
obtain an adverse ruling);  id. R. 38.1(i) (requiring the appellant to
give “clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record”).  Accordingly, we overrule
Madrigal’s second issue.

IV.  Defense
of Third Persons

            By
his third issue, Madrigal contends that the trial court erred by not
instructing the jury on his requested affirmative defense of defense of third
persons.  “An accused has the right to an
instruction on any defensive issue raised by the evidence, whether that
evidence is weak or strong, unimpeached or contradicted, and regardless of what
the trial court may or may not think about the credibility of the defense.”  Hamel
v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).  The accused’s
testimony alone may be sufficient to raise a defensive theory requiring a
charge.  Id.  The failure to instruct the jury on a defensive issue when
it is raised by the evidence is subject to harmless error analysis.  Id.
at 494.  Consequently, we consider (1) whether the evidence, viewed in the
light most favorable to Madrigal, is sufficient to raise the issue of defense
of third persons; and (2) whether failure to include the requested jury
instruction constituted harmful error.  See id.; Dyson v. State,
672 S.W.2d 460, 463 (Tex. Crim. App. 1984). 

            A
person is justified in using force to protect another so long as the accused
reasonably believes that the third person would be justified in using force to
protect herself.  Hughes v. State, 719 S.W.2d 560, 564 (Tex. Crim. App.
1986).  Additionally, the actor must reasonably believe that his intervention
is immediately necessary to protect the third person.  See id.; see
also Tex. Penal Code Ann.
§§ 9.32(a), 9.33 (West 2003).

            To
establish that he was entitled to a jury instruction for defense of third
persons, Madrigal points to the following excerpt from his testimony:

Q:        [Counsel
for Madrigal]  Did you fear at any point in time for Melanie?

 

A:        [Madrigal] 
Yes.

 

Q:        Okay. 
Why?

 

A:        Because
she was right there next to me and in front of me.  They were coming from the
back of her.

 

Q:        When
you saw them coming at you at a pretty good pace[,] what did you do?

 

A:        I
move[d] Melanie to the side.

 

Q:        Did
you push her?

 

A:        Yes.

 

Q:        Why
did you push her?

 

A:        So
she wouldn’t be in the way [when Cervantes was] coming towards me.

 

Q:        Did
you also fear for her life?

 

A:        Yes.

 

We disagree
that this testimony constituted any evidence of Madrigal’s reasonable belief
that Melanie would have been justified in using force to protect herself. 
Under similar facts, the Fort Worth Court of Appeals held similarly, noting in
that case that the

[a]ppellant admitted that the
complainant appeared to be unarmed and that he never saw the complainant
holding any type of weapon.  Appellant also testified that he stabbed the
complainant because the complainant was trying to hurt him.  This evidence
supports the trial court's decision to submit the issue of self-defense to the
jury but does not support [a]ppellant's claim of defense of third persons.

 

Kennedy v.
State, 193 S.W.3d
645, 653 (Tex. App.—Fort Worth 2006, pet ref’d).  Because no evidence indicated
that Melanie was in danger of being attacked by Cervantes, Madrigal’s testimony
that he feared for her safety was insufficient to raise the defense of third
persons.  See Tex. Penal Code Ann.
§ 9.33; Hughes, 719 S.W.2d at 564.  Therefore, it was not error for
the trial court to deny Madrigal’s instruction on the affirmative defense.  Hamel,
916 S.W.2d at 494.  Accordingly, we overrule Madrigal’s third issue.

V. 
Sufficiency of the Evidence

            By
his fourth issue, Madrigal contends that the trial court erred because “the
jury’s rejection of [Madrigal’s] affirmative defense of self-defense was
against the great weight and preponderance of the evidence.”  We construe this
issue to be a challenge to the legal sufficiency of the evidence weighing
against Madrigal’s self-defense affirmative defense.

The
Texas Court of Criminal Appeals has held that our only sufficiency review
should be under “a rigorous and proper application” of the Jackson
standard of review, and therefore, we apply only that standard as argued in
Madrigal’s legal sufficiency arguments.  See Brooks v. State, 323 S.W.3d
893, 906 (Tex. Crim. App. 2010).  Under this standard, “the relevant question
is whether, after viewing the evidence in the light most favorable to the prosecution,
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 319
(1979); see Brooks, 323 S.W.3d at 902 n.19.  “[T]he fact-finder’s role
as weigher of the evidence is preserved through a legal conclusion that upon
judicial review all of the evidence is to be considered in the light
most favorable to the prosecution.”  Jackson, 443 U.S. at 319 (emphasis
in original); see Tex. Code Crim.
Proc. Ann. art. 38.04 (West 1979) (“The jury, in all cases, is the
exclusive judge of facts proved, and the weight to be given to the
testimony . . . .”); Wesbrook v. State, 29 S.W.3d
103, 111 (Tex. Crim. App. 2000) (“The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given testimony, and it is
also the exclusive province of the jury to reconcile conflicts in the
evidence.”).  The State is required to negate, beyond a reasonable doubt, any
affirmative defenses raised by the evidence.  See Zuliani v. State, 7
S.W.3d 589, 594 (Tex. Crim. App. 2003).  

Here,
Madrigal challenges the sufficiency of the evidence negating his claim of
self-defense.  The penal code provides that “a person is justified in using
force against another when and to the degree he reasonably believes the force
is immediately necessary to protect himself against the other’s use or
attempted use of unlawful force.”  See Tex.
Penal Code Ann. § 9.31(a) (West 2003).

Although
we agree with Madrigal that there was evidence that would have allowed a jury
to find that he acted in self-defense, the jury was free to disbelieve all of such
evidence.  See Wesbrook, 29 S.W.3d at 111.  In fact, there was also
evidence to support a finding that he did not act in self-defense.  For
example, during Cervantes’s testimony, he indicated that Madrigal was the
aggressor:

Q:        [Counsel
for the State]  And what happened next? . . . .

 

A:        [Cervantes] 
. . . I reached over to open my door and Melanie said, “Look
out.”  And by the time I turned my head, he already had hit me a couple times. 
So I reached over and grabbed him and started swinging back at him.

 

Based
on Cervantes’s testimony, and after viewing all of the evidence in the light
most favorable to the prosecution, we conclude that a rational jury could have found
beyond a reasonable doubt that Madrigal was not acting in self-defense.  See
Jackson, 443 U.S. at 319; Brooks, 323 S.W.3d at 902 n.19. 
Therefore, Madrigal’s fourth issue is overruled.

VI. 
Conclusion

            Having
overruled all of Madrigal’s issues on appeal, we affirm the trial court’s
judgment.

 

 

________________________

GINA
M. BENAVIDES,

Justice

 

Publish.

Tex. R. App.
P.47.2(b).

 

Delivered and filed the

7th day of July, 2011.