George Washington **HICKS,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–94–00167–CR.

Court of Appeals of Texas, San Antonio.

April 26, 1995.

Discretionary Review Refused Aug. 23, 1995.

---

Judith K. Wemmert, San Antonio, for appellant.

Steven C. Hilbig, Crim. Dist. Atty., Alan E. Battaglia, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Before CHAPA, C.J., and HARDBERGER and DUNCAN, JJ.

CHAPA, Chief Justice.

Appellant, George Washington Hicks, was indicted for aggravated sexual assault. A jury found appellant guilty of the offense charged. Punishment, enhanced by proof of two prior convictions, was assessed at eighty years' imprisonment.

Brandee Ballard, the complainant, testified that, as she was walking to the grocery store at 11:00 AM, appellant forced her into a car, tied her hands with wire, and drove her to a nearby house. He took her inside, took her to a bedroom, choked her when she began screaming, and raped her. He then talked to her for a while, and raped her again. After several hours, he walked her to the grocery store and left her. She called the police and was taken to a hospital, where she was examined and a "rape kit" was prepared. Ballard was the only eye witness to the attack, and described her attacker as a gray-haired Black male in his late thirties to early forties, and as having a gap in his front teeth. Based on this description, the detective put together a photo lineup. The appellant was the only one in the photo lineup with a gap in his teeth. Ballard positively identified appel-

lant as her attacker in the photo lineup and at trial.

In his first point of error, appellant contends the trial court erred in denying his motion for mistrial after both the trial judge and a police officer referred to extraneous offenses allegedly committed by appellant. The references were made in two separate instances. First, during his opening remarks to the entire jury panel, the trial judge stated: "This defendant, ladies and gentlemen, is charged with the felony offense of aggravated sexual assault. And he is charged as a habitual. So that, of course, is a first degree felony." Appellant did not immediately object to this remark. As soon as the judge finished his general voir dire, appellant's counsel asked to approach the bench and, out of the jury's hearing, made an objection on the record to the reference to "a habitual," which the court denied. The attorney then told the judge she believed it was reversible error and that she wanted a new jury. The court denied her request. The following morning, appellant's counsel requested that the court give the jury an instruction to disregard his comment, and presented a written motion for a mistrial, which was denied. Subsequently, when the jury was brought in, the judge did instruct the jury to disregard his remark, and to not consider it for any purpose whatsoever. Appellant's attorney then reasserted the motion for mistrial.

■ Appellant contends that the judge's remark, in its ordinary meaning, was sufficient to put the jury on notice that the appellant had been involved in previous criminal activity. Moreover, he asserts that this information was given additional weight and credibility because it came from the judge. The State contends that the appellant's objection was not timely, as it was not made immediately after the remark. The question of timeliness aside, however, comments implying extraneous offenses by the defendant are generally cured by an instruction to disregard, except when it appears that the statements are clearly calculated to inflame the minds of the jurors and are of such a character to suggest that it is impossible to withdraw the impression produced on their minds. *Coe v. State*, 683 S.W.2d 431, 436

(Tex.Crim.App.1984) (citing *Thompson v. State*, 612 S.W.2d 925, 928 (Tex.Crim.App. 1981)). Moreover, a jury instruction by a trial judge to disregard any comments made by him is generally sufficient to cure any error in his statements. *Marks v. State*, 617 S.W.2d 250, 252 (Tex.Crim.App.1981). We conclude that the court's instruction to disregard his own remark cured any error arising from the remark.

■ In the second instance of an improper remark on extraneous offenses, Detective Dempsey Wilson, Jr., testified that "the reason that the photo array was obtained is because [the appellant] was a suspect in several other sexual assault cases." Appellant immediately objected, asked for an instruction and moved for a mistrial. The trial court overruled the objection and instructed the jury to disregard. Appellant asserts that the detective's remark on extraneous offenses of the same nature as the present offense, combined with the judge's remark, undermines the court's instruction to disregard and rises to a level of prejudice that cannot be cured by the instruction. Based on the officer's level of experience and rank, appellant argues, his remark was highly prejudicial and clearly calculated to inflame the jury. Appellant points to the fact that the State's case was based solely on Ballard's identification of appellant rather than any physical evidence, and that her identification was based on an allegedly impermissible lineup referred to by the detective. Appellant further contends that the fact that he was included in the photo array as a sexual assault suspect, as alluded to in Detective Wilson's remarks, would be highly suggestive to the jurors as they deliberated appellant's guilt. Although we do not conclude that the remark was invited, we note that it stemmed somewhat from cross-examination. While we agree with appellant that Detective Wilson's remark was improper, especially considering his length of service and experience, we are guided by the dictates of the court of criminal appeals as expressed in *Coe*: we find that the remark is not sufficiently inflammatory and the court's instruction to disregard was sufficient to cure the error. *See Coe*, 683 S.W.2d at 436.

■ Appellant also contends that the remarks influenced the jurors' decision in the punishment phase, as evidenced by the eighty years' sentence, which greatly exceeded his previous incarcerations. We find this argument unpersuasive. At the punishment phase, the jurors were presented with evidence to show that appellant had been previously convicted of aggravated sexual assault, robbery, statutory rape, and burglary. It is reasonable to assume the jurors considered this string of previous offenses independent of the two remarks made during the guilt phase to reach their decision to assess a sentence commensurate with the instant crime, enhanced by the previous convictions.

■ Under this first point of error, appellant also refers to his motion for new trial, in which he alleged that one of the jurors had worked in the criminal justice system and was therefore familiar with the meaning of the term "habitual." The record does not reflect, however, that a hearing on the motion was ever held. Allegations in motions for new trial do not prove themselves. *Vaughn v. State*, 456 S.W.2d 141, 142 (Tex. Crim.App.1970). Unproved allegations in a motion for new trial present nothing for our review. *See Jones v. State*, 501 S.W.2d 677, 680 (Tex.Crim.App.1973). Appellant's first point of error is overruled.

In his second point of error, appellant asserts that he was denied effective assistance of counsel because his attorney failed to pursue forensic testing in order to provide evidence of his innocence. A "rape kit" was prepared when Ballard was examined at the hospital following the assault. However, the State never obtained any body fluid samples from the appellant in an effort to match the DNA of the appellant to the samples taken from Ballard.

■ A claim of ineffective assistance of counsel must be determined upon the particular circumstances and facts of each individual case. *Johnson v. State*, 691 S.W.2d 619, 626 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985). A defendant in a Texas criminal case is entitled to reasonably effective assistance of counsel. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986), *cert. denied*,

480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Ex parte Duffy*, 607 S.W.2d 507, 513 (Tex.Crim.App.1980). The United States Supreme Court, in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), held that in order to show ineffective assistance of counsel, a convicted defendant must (1) show that his trial counsel's performance was deficient, in that counsel made such serious errors that he was not functioning effectively as counsel and (2) show that the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. " 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Butler v. State*, 716 S.W.2d 48, 54 (Tex.Crim. App.1986) (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064).

■ The *Strickland* standard has been adopted in Texas for resolving allegations of ineffective assistance of counsel under both the federal and state constitutions. *See Holland v. State*, 761 S.W.2d 307, 314 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989); *Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim.App.1986). Whether the *Strickland* standard has been met is to be judged by the "totality of the representation," rather than by isolated acts or omissions of trial counsel, and the test is applied at the time of the trial, not through hindsight. *Wilkerson*, 726 S.W.2d at 548. Allegations of ineffective assistance of counsel will be sustained only if they are firmly founded. *Smith v. State*, 676 S.W.2d 379, 385 (Tex.Crim.App.1984), *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985). The burden of proof rests upon the convicted defendant by a preponderance of the evidence. *Moore v. State*, 694 S.W.2d 528, 531 (Tex.Crim.App.1985).

■ The record shows that appellant's attorney questioned the testifying doctor about her knowledge of DNA testing, attempted to question the officer who first took Ballard's statement about why no testing had been done, and extensively ques-

tioned Detective Wilson, who had headed the investigation, about why no DNA testing had been done. Detective Wilson explained that when a defendant is positively identified, as in this case, it is the usual procedure to omit the testing of physical samples. The record also shows that appellant's attorney during closing argument forcefully brought to the jury's attention the fact that the State had failed to test the physical evidence and suggested that it was error on the part of the State to rely solely on Ballard's testimony and identification of appellant. An examination of the totality of the record fails to reveal that appellant's attorney's performance was deficient or fraught with errors. On the contrary, the record reveals that the attorney actively pursued the lack of physical evidence in cross-examination and in argument. Such an attack on the State's failure to produce physical evidence can be viewed as sound trial strategy. Strategic choices, made after thorough investigation of law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. Appellant has failed to carry his burden of establishing deficient representation, and we do not reach the second *Strickland* prong. The point is overruled.

In his final point of error, appellant contends that the trial court erred in not suppressing Ballard's in-court identification because it was based on an impermissively suggestive lineup. Ballard had originally identified her attacker as having gray hair in a short afro with medium curls, and a gap between his front teeth. At the time of arrest, appellant's photo did not show curls or gray hair. In the photo lineup shown to Ballard, only appellant had his mouth open, showing the gap in his teeth. Appellant suggests that the discrepancy in the pre-lineup description of hair and the appellant's actual appearance is a factor to be considered in determining the origin of Ballard's in-court identification. *Turner v. State*, 614 S.W.2d 144, 146 (Tex.Crim.App.1981). Moreover, appellant contends that the inclusion of his photo showing his teeth in the photo array resulted in a tainted lineup that caused Ballard to misidentify him at trial.

A two-step analysis is used to determine the admissibility of an in-court identification. *Delk v. State*, 855 S.W.2d 700, 706 (Tex.Crim.App.), *cert. denied*, ⸺ U.S. ⸺, 114 S.Ct. 481, 126 L.Ed.2d 432 (1993). First, the photo display must not be impermissibly suggestive. In the second step, we must look at the totality of the circumstances to determine that the suggestive procedure must not have given rise to a "very substantial likelihood of irreparable misidentification." *Id.* Among the factors the court must consider are: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the witness's level of certainty; and (5) the time between the crime and the confrontation. *Id.* (citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). The defendant must show by clear and convincing evidence that the in-court identification is unreliable. *Harris v. State*, 827 S.W.2d 949, 959 (Tex.Crim.App.), *cert. denied*, ⸺ U.S. ⸺, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992).

First, we must consider whether the photo lineup was impermissibly suggestive. Ballard described her assailant as being a Black male, approximately thirty-five to forty years old, approximately five foot, eight inches tall, 150 to 160 pounds, with gray hair worn in an afro, and a gap between his teeth. The lineup consisted of five photos of black men, generally matching the description. Only appellant's photo showed his teeth. Both the detective and Ballard testified that the detective did not in any way direct Ballard's attention to appellant's photo. Ballard immediately picked out appellant's photo as her assailant. Even the use of a single photograph, while suggestive, is not necessarily inadmissible, per se. *Herrera v. State*, 682 S.W.2d 313, 318–19 (Tex.Crim.App.1984), *aff'd*, ⸺ U.S. ⸺, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). In the instant case, five photos were presented and, although only appellant's picture showed his teeth, the other photos did not affirmatively show teeth without a gap. Ballard's identification of appellant was immediate and positive, and she testified that the teeth were not a factor in

her identification of him. The photos were black and white, which would not reveal a small amount of gray hair as accurately as would color photographs. Appellant has failed to show that the photo lineup was impermissibly suggestive. *Cf. Buxton v. State,* 699 S.W.2d 212, 216 (Tex.Crim.App. 1985), *cert. denied,* 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986) (varying height, weight, and skin color of persons in lineup not unnecessarily suggestive); *Bethune v. State,* 821 S.W.2d 222, 229 (Tex.App.—Houston [14th Dist.] 1991), *aff'd,* 828 S.W.2d 14 (Tex.Crim.App.1992) (lineup not unduly suggestive although defendant was taller than others, had less faded clothes, and was placed in middle).

Nonetheless, even if we were to consider the array impermissibly suggestive, application of the second step in our analysis reveals that appellant has failed to carry his burden to show that the array procedure likely resulted in misidentification. Applying the five factors listed above, we conclude that the complainant had ample opportunity to view the appellant, having been locked in a room with him during daylight hours for six to seven hours, having been raped by him twice, having carried on a conversation with him, and having been walked back to the store by him. The record shows that Ballard was able to describe physical characteristics, as she recalled the way her assailant's eyes "bulge[d] out," his lips, and his "scruffy look," indicating that she paid a degree of attention to his physical features. Ballard's pre-lineup description of appellant was fairly accurate, and her level of certainty in pointing to appellant as her assailant was high, both at the photo array and at trial. She was positive and unequivocal in her identification of him. Finally, the time periods that passed between the assault on January 11, 1993, and the photo lineup on January 21, 1993, and between the assault and the time of trial in March 1994 were not sufficiently lengthy to detract from Ballard's identification. *See Delk,* 855 S.W.2d at 707 (eighteen months between crime and trial do not damage witness's identification). We conclude that appellant has failed to show by clear and convincing evidence that the in-court identifi-

cation was unreliable. The point of error is overruled.

The judgment of the trial court is AFFIRMED.