Opinion issued November 3, 2005 



 







 







In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-00863-CR
__________
 
JOSUE F. VAZQUEZ, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause No. 946315
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Josue F. Vazquez, guilty of murder


 and assessed
punishment at confinement for forty-five years. Appellant brings five points of error
for our review. Appellant contends that the trial court erred in denying his motion for
mistrial, improperly commenting on the evidence, and admitting hearsay testimony. 
He also contends that the evidence was legally and factually insufficient to support
his conviction. We affirm.
Facts
          Michelle Alaaedin, the common-law wife of the complainant, Gary Pruett,
testified that on the night of April 15, 2003, she fell asleep at the trailer house of
James Dunning, the complainant’s friend. She woke up around midnight, and found
the complainant and Dunning drinking vodka at the kitchen table. She told the
complainant that it was time to go, and the complainant drove Alaaedin to her house,
which was nearby. After driving Alaaedin home, the complainant and Dunning
returned to Dunning’s trailer. Alaaedin called the complainant, who remained at
Dunning’s trailer, several times throughout the morning, and Dunning told her that
he would be home shortly. Alaeedin called one final time at 5:35 a.m., and during
this call she overheard the voice of Adrian Medina, who she knew to be a friend of
appellant. She then heard the complainant state, “so what are you going to do, shoot
me now,” and the phone went dead. Alaaedin called for emergency assistance, and
then called Dunning’s trailer. Dunning answered and described what had happened. 
Alaaedin went to Dunning’s trailer, arriving there approximately twenty minutes after
the phone went dead during her conversation with the complainant. She saw the
complainant leaving the scene in an ambulance. 
          Alaaedin testified that the complainant and Dunning used narcotics and drank
alcohol and that the complainant and Dunning had bought narcotics on previous
occasions from appellant and Medina. On the night before the shooting, Alaaedin
saw appellant and Medina selling narcotics to Dunning. She noted that the
complainant did not have a weapon and that she had never seen a weapon at
Dunning’s trailer. 
          During cross-examination, Alaaedin admitted that the complainant had a
serious narcotics problem and that this created problems in their marriage. She also
stated that Dunning was a narcotics user, that the complainant and Dunning used
narcotics together, and that Dunning sold prescription drugs illegally. She admitted
that she had heard that Dunning had supplied guns and ammunition to Medina and
appellant and that Dunning had traded ammunition with Medina and appellant for
narcotics. On re-direct, Alaaedin testified, over objection, that when she spoke with
Dunning after calling for emergency assistance, Dunning told her that “[appellant]
and Medina had just shot [the complainant] and [the complainant] wasn’t breathing.”
          Mario Delgadillo, a close friend of appellant and a friend of Medina, testified
that after the shooting, appellant and Medina came to his house and told him that they
had shot the complainant because he was “talking shit” and that they thought the
complainant was dead. When Delgadillo spoke with appellant by phone a few days
after the shooting, appellant stated that he and Medina were leaving town. When the
police searched Delgadillo’s home, they found a case of bullets and car keys
underneath some mattresses in Delgadillo’s bedroom. Delgadillo explained that these
items were not his, that he did not know how they got underneath his mattresses, and
that when appellant and Medina had been at his house on the morning after the
shooting, appellant and Medina were alone in his bedroom for a few minutes.
Delgadillo admitted that he had two criminal cases pending, but he denied making
any deals with the State for providing testimony in this case.
          Harris County Sheriff’s Deputy Andres Blanco testified that he was the first
officer to arrive at Dunning’s trailer following the shooting and he secured the scene. 
Blanco met Dunning, who he described as being “shaken up.” Harris County
Sheriff’s Deputy Charles Patberg testified that when he arrived at the scene, Dunning
told him what happened. Patberg noted that there were no other witnesses to the
shooting. Dunning told Patberg, at the scene, that he and the complainant had been
approached by unknown men wearing masks and that these men shot the complainant
and fled the scene.
          Harris County Sheriff’s Deputy Randy Schield testified that he conducted an
investigation at the scene, and, when he arrived, there was a car with a couple of
bullet holes in it and its rear window shot out. He also noticed that a piece of the
car’s emblem was missing. Schield located four shell casings around Dunning’s
trailer. When he visited a nearby location on Longview Street, Schield located an
additional seven casings, some glass fragments, and a piece of a car emblem matching
the broken emblem on the car outside of Dunning’s trailer. 
          Dunning testified that before the shooting he and the complainant drove in
Dunning’s car to meet appellant and Medina at a nearby street to purchase narcotics. 
During the purchase, the complainant and appellant got into a fight, and appellant
pointed a gun at the complainant’s head. The complainant dared appellant to shoot
him. Dunning panicked, and hit the gas pedal of his car. Appellant and Medina shot
at Dunning’s car, knocking out the car’s back window and putting holes in his car. 
Dunning and the complainant drove back to Dunning’s trailer, and the complainant
called the police to report the shooting. The complainant then called appellant and
Medina to tell them that they were “going down.” Dunning then went outside to
sweep the glass out of his car, and he saw appellant and Medina approach. Medina
pointed a gun at Dunning. The complainant came out of Dunning’s trailer, and
repeated to appellant that appellant and Medina were “going down.” Appellant shot
the complainant, and appellant and Medina told Dunning to say that he had not seen
anything. Dunning went inside his trailer, heard more gun shots, and called for
emergency assistance. Dunning stated that he did not initially tell the police the
identity of the assailants because he was in shock and was fearful.  
          Dunning acknowledged being a paranoid schizophrenic, but asserted that this
condition did not affect his recollection of the events. Dunning admitted to receiving
treatment and medication for his mental condition and that he suffered from hearing
voices, seeing visions, and having hallucinations as a result of his medical condition. 
Dunning also conceded that, in exchange for his testimony, the State granted him full
immunity for the information he disclosed in his testimony and that the State agreed
not to contest a habeas petition filed by Dunning in a separate criminal case related
to an aggravated robbery that he previously committed. Dunning also acknowledged
that he had an extensive criminal history, had been a chronic alcoholic for most of his
life, and that he used narcotics.
          Harris County Sheriff’s Deputy Brian McNabb testified that on the early
morning of April 16, 2003, he met with the complainant, who had called to report a
shooting. McNabb took a report of “deadly conduct” from the complainant.
          Robert Wilson, an employee of the Texas Department of Public Safety Crime
Lab, testified that he compared the glass found at the scene with the glass found at the
location on Longview Street, and that the glass found at both locations had many of
the same properties and could have come from the same source, but that he could not
be certain.
          James Johnson, a Harris County Sheriff’s Office homicide investigator,
testified that appellant and Medina went to Mexico following the murder, that they
had turned themselves in to the United States embassy in Mexico, and that he and
another officer drove to Laredo, Texas in order to transfer appellant and Medina to
Houston. 
          Wayne Kuhlman, a Harris County Sheriff’s Office detective and the lead
homicide investigator in this case, testified that he met with Dunning at the scene two
to three hours after the murder. Kuhlman also testified that he met with Delgadillo,
and that he found a set of keys at Delgadillo’s residence that he believed belonged to
appellant.
Legal and Factual Sufficiency
          In his fourth and fifth points of error, appellant argues that the evidence is
legally and factually insufficient to support his conviction because the State’s
witnesses “were not worthy of belief by a rational fact-finding body.” First, appellant
attacks the credibility of Dunning’s testimony by noting that Dunning originally told
the sheriff’s deputies that he could not identify the assailants. Appellant further notes
that Dunning’s testimony was provided in exchange for the State’s promise of
immunity and the State’s promise to remain neutral on a habeas petition filed in an
unrelated criminal case. Appellant also points out that Dunning was a paranoid
schizophrenic with a lengthy criminal record and a narcotics abuse problem. Second,
appellant attacks the testimony of Delgadillo by noting that he was found to be in
possession of ammunition and car keys linked to the murder of the complainant. 
Third, appellant attacks the testimony of Alaaedin by noting that she did not hear any
actual gun shots during her phone conversation with the complainant. Appellant also
notes that the State did not recover any weapons and that there was no “other forensic
evidence directly linking appellant to either scene.” 
          We review a challenge to the legal sufficiency of the evidence by viewing the
evidence in the light most favorable to the verdict to determine if any rational fact
finder could have found the essential elements of the offense beyond a reasonable
doubt. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In a legal
sufficiency review, we may not substitute our own judgment for that of the fact
finder. Id. We review a challenge to the factual sufficiency of the evidence by
examining all of the evidence neutrally, not in the light most favorable to the verdict,
and we will set aside the verdict only if the evidence is so weak that the verdict is
clearly wrong or manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004); see also Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000). Although our analysis considers all the evidence
presented at trial, the trier of fact is the exclusive judge of the facts, the credibility of
the witnesses, and the weight to be given to their testimony. See Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury’s determination concerning
what weight to give contradictory testimonial evidence because the jurors were in
attendance when the testimony was delivered. Johnson, 23 S.W.3d at 8.
          A person commits the offense of murder if he intentionally or knowingly
causes the death of another person or intends to cause serious bodily injury and
commits an act clearly dangerous to human life that causes the death of another
person. Tex. Pen. Code Ann. § 19.02(b) (Vernon 2003).
          Here, Dunning testified that he saw appellant shoot the complainant. It is well
established that the testimony of a single eyewitness is sufficient to support a
conviction. Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982).
Furthermore, Delgadillo, a friend of appellant and Medina, testified that appellant and
Medina confessed to shooting the complainant. Delgadillo also testified that
appellant stated that appellant and Medina were leaving town, and an investigator
with the Harris County Sheriff’s Office testified that appellant and Medina were
found in Mexico following the shooting. Evidence of flight shows a consciousness
of guilt of the crime for which the defendant is on trial. Bigby v. State, 892 S.W.2d
864, 884 (Tex. Crim. App. 1994). Alaaedin testified that when she spoke with the
complainant during the early morning hours of April 16, she heard Medina’s voice
in the background, indicating that Medina, the co-actor of appellant, was at the scene. 
While appellant challenges the credibility of the testimony of these witnesses, the
jury, as the trier of fact, was the sole judge of their credibility and was free to accept
or to reject all or part of their testimony. See Jones v. State, 944 S.W.2d 642, 647
(Tex. Crim. App. 1996).
          Considering this evidence, a rational fact finder could have found, beyond a
reasonable doubt, that appellant committed the offense of murder. Thus, we hold that
the evidence was legally sufficient to support appellant’s conviction. Additionally,
viewing all of the evidence neutrally, we conclude that the evidence was not so weak
that the verdict was clearly wrong or manifestly unjust and that the contrary evidence
was not so strong that the standard of proof beyond a reasonable doubt could not have
been met. Accordingly, we hold that the evidence was factually sufficient to support
appellant’s conviction.
          We overrule appellant’s fourth and fifth points of error.
Improper Question
          In his first point of error, appellant contends that the trial court erred in denying
his motion for mistrial after the State asked a prejudicial question in front of the jury. 
During its direct-examination of Kuhlman, the lead homicide investigator, the State
asked him whether Adrian Medina’s brother “let [Kuhlman] know about Adrian
confessing the murder to him?” Appellant objected to this question on grounds of
hearsay, and the trial court sustained appellant’s objection. Appellant then asked the
trial court to instruct the jury “to disregard that last response.” After noting that
Kulhman did not even answer the State’s question, the trial court instructed the jury
to “disregard any answer that might have been forthcoming.” Appellant then asked
that the jury be instructed to disregard the answer that was suggested in the question
itself, and the trial court again stated that “the jury will disregard.” Appellant then
made a request for a mistrial, which the trial court denied. 
          We review a trial court’s denial of a motion for mistrial for an abuse of
discretion. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). A trial court
may declare a mistrial when an error occurs that is so prejudicial that the expenditure
of further time and expense would be wasteful. Wood v. State, 18 S.W.3d 642, 648
(Tex. Crim. App. 2000). Generally, any error in asking an improper question is cured
or rendered harmless by an instruction to disregard. Ransom v. State, 789 S.W.2d
572, 585 (Tex. Crim. App. 1989); Torres v. State, 92 S.W.3d 911, 918 (Tex.
App.—Houston [14th Dist.] 2002, pet. ref’d). A court will rarely reverse a conviction
due to an inappropriate question asked during trial. Ransom v. State, 789 S.W.2d at
585.
          Appellant argues that the instruction to disregard did not cure the error because
the question assumed that appellant’s co-actor confessed to the murder. The Court
of Criminal Appeals addressed a similar argument in Ransom. Id. In Ransom, the
State asked the defendant, who was charged with capital murder and who denied
being involved in a conspiracy to rob and kill multiple persons, “Would it surprise
you to know that they [appellant’s co-defendants] don’t agree with your version?” 
Id. The trial court sustained the defendant’s objection to the State’s question and
instructed the jury to disregard the question, but denied the defendant’s motion for
mistrial. Id. The Court of Criminal Appeals, noting that the co-defendants’
confessions were not actually admitted, held that the instruction to disregard was
sufficient to cure any error. Id. at 586. 
          Like the question asked by the State in Ransom, the question asked by the State
in this case suggested that Medina, appellant’s alleged co-actor, may have confessed
to the murder. However, appellant promptly objected, and the trial court sustained
the objection and provided multiple instructions to disregard. Accordingly, we hold
that the instruction to disregard was sufficient to cure any error and that the trial court
did not abuse its discretion in denying appellant’s motion for mistrial.



          We overrule appellant’s first point of error.
Commenting on the Evidence
          In his second point of error, appellant contends that the trial court erred in 
commenting on evidence during appellant’s cross-examination of Kuhlman. 
Appellant asked Kuhlman whether he knew that Dunning was a “chronic paranoid
schizophrenic.” The State objected to this question on the grounds that it invaded the
province of the jury. The trial court commented:
I think you can ask him that without going into the whole litany of
questions that have not really been substantiated by anything other than
you making the comment or statement that the person is a, you know,
schizophrenic or whatever.
 
          Appellant asserts that the trial court’s comments violated article 38.05 of the
Texas Code of Criminal Procedure, which provides that “[i]n ruling upon the
admissibility of evidence, the judge shall not discuss or comment upon the weight of
the same or its bearing in the case, but shall simply decide whether or not it is
admissible.” Tex. Code Crim. Proc. Ann. art. 38.05 (Vernon 1979). Appellant
argues that the trial court’s comments conveyed to the jury that the trial court did not
believe that there was any proof or evidence that Dunning was a schizophrenic, even
though Dunning admitted that he suffered from this mental condition. The State does
not contest that the comments were improper. Rather, the State argues that appellant
suffered no harm as a result of the comments.
          Appellant objected to the trial court’s comments. Although the trial court
initially overruled appellant’s objection, it apparently reconsidered its ruling and then
sustained appellant’s objection. After the trial court sustained appellant’s objection
to its comments, appellant neither requested an instruction to the jury to disregard the
comments nor a mistrial.
           An instruction to disregard is generally sufficient to cure harm, if any, arising
from improper comments made by a trial court. Marks v. State, 617 S.W.2d 250,
252 (Tex. Crim. App. 1981); Hicks v. State, 901 S.W.2d 614, 617 (Tex. App.—San
Antonio 1995, pet. ref’d). Here, by sustaining appellant’s objection, the trial court
provided appellant all the relief he requested. Nethery v. State, 692 S.W.2d 686, 701
(Tex. Crim. App. 1985). Accordingly, we hold that appellant waived any error by
failing to request an instruction to disregard the trial court’s comment. See Bush v.
State, 762 S.W.2d 353, 355 (Tex. App.—Fort Worth 1988, no pet.). 
          We overrule appellant’s second point of error. 
Hearsay
          In his third point of error, appellant contends that the trial court erred in
permitting Alaaedin to testify, over objection, “concerning several hearsay
statements.” Generally, hearsay is not admissible except as provided by statute or
the rules of evidence. Tex. R. Evid. 802. Hearsay is generally defined as a statement,
other than one made by the declarant while testifying at trial or hearing, offered in
evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). We review
a trial court’s determination on the admissibility of evidence under an abuse of
discretion standard. Kubin v. State, 868 S.W.2d 394, 396 (Tex. App.—Houston [1st
Dist.] 1993, pet. ref’d). 
The complainant’s statement to Alaaedin
          First, appellant complains that Alaaedin was permitted to testify as to what she
heard the complainant say during her phone conversation with him before he was
shot. This testimony was offered during the following exchange:
          [State]:        Did you hear Gary Pruett say anything?
 
          [Alaaedin]:  Yeah.
 
          [State]:        What did he say?
 
          [Appellant]: Object to what Gary said as hearsay, Your Honor.
 
          [State]:        And, again, Your Honor, if they’re intending to bring up
self-defense, then what he said goes to show what was his
state of mind.
 
          [Court]:       It’s overruled. 
 
          [State]:        What did you hear Gary Pruett say?
 
          [Alaaedin]:  He said, so what are you going to do, shoot me now?

          Appellant notes that he did not testify, and thus did not raise the issue of self-defense, so the State’s suggestion that the testimony could be offered to show the
complainant’s state of mind was misplaced.


 In response, the State argues that
appellant failed to preserve error by failing to object each time the objectionable
evidence was offered. See Lane v. State, 151 S.W.3d 188, 193 (Tex. Crim. App.
2004). The State argues that appellant failed to preserve this issue for review because
after the above exchange occurred, the State asked Alaaedin, “So, did you hear Gary
say anything other than, are you going to shoot me now?,” and appellant did not
object to this question. 
          In regard to the State’s argument that appellant did not preserve his objection
to Alaaedin’s testimony by failing to object to the State’s follow-up question, we note
that this follow-up question did nothing more than incorporate the testimony just
offered by Alaeedin, and admitted, over objection, by the trial court. Assuming,
without deciding, that appellant preserved his objection, the trial court’s error, if any,
in admitting the above testimony does not require reversal. The admission of a
statement that is hearsay is non-constitutional error subject to a harm analysis under
Texas Rule of Appellate Procedure 44.2(b). Tex. R. App. P. 44.2(b). Rule 44.2(b)
requires us to disregard a non-constitutional error that does not affect a criminal
defendant’s substantial rights. Id.; Garcia v. State, 126 S.W.3d 921, 927 (Tex. Crim.
App. 2004). We may not reverse a defendant’s conviction for non-constitutional
error if, after examining the record as a whole, we have fair assurance that the error
did not have a substantial and injurious effect or influence in determining the jury’s
verdict. Garcia, 126 S.W.3d at 927; Bourque v. State, 156 S.W.3d 675, 677 (Tex.
App.—Dallas 2005, pet. ref’d). The improper admission of evidence is rendered
harmless when other properly admitted evidence proves the same fact. Brooks v.
State, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); Bourque, 156 S.W.3d at 677.
          In conducting our review of the record as a whole, we note that Dunning
testified that he saw appellant shoot the complainant. Furthermore, Delgadillo
testified that appellant and Medina confessed to shooting the complainant. Delgadillo
also testified that appellant stated that he and Medina were leaving town, and
appellant and Medina were found in Mexico following the murder. Alaaedin testified
that when she spoke with the complainant during the early morning hours of April 16,
she heard the voice of appellant’s co-actor in the background, indicating that Medina
was at the scene at or near the time of the shooting. Based on this evidence, and the
other evidence discussed above in addressing appellant’s factual and legal sufficiency
challenges, we have fair assurance that the error did not have a substantial and
injurious effect or influence in determining the jury’s verdict.
Dunning’s statement to Alaaedin
          Second, appellant complains that Alaaedin was permitted to testify as to what 
Dunning said in her phone conversation with him after the complainant was shot. 
This testimony was offered during the following exchange:
          [State]:        When you got on the phone with James, did he – did he tell
you as things were happening what was going on?
 
          [Alaaedin]:  Yes.
 
          [State]:        Like as he’s seeing it, he’s telling you, he’s describing
what he sees.
 
          [Alaaedin]:  Yes.
 
          [State]:        And so what did he tell you?
 
          [Appellant]: Object to what – what James said as hearsay.
 
          [State]:        I’m bringing under exception, present sense impression, if
he’s describing what he sees.
 
          [Court]:       It’s overruled.
 
          . . . 
 
          [Alaaedin]:  He said that Josue and Adrian had just shot Gary and that
Gary wasn’t breathing.Appellant asserts that Alaaedin did not hear gun shots during her phone
conversation with Dunning and that there is no other evidence establishing the time
frame necessary for the admission of the statement under the present sense impression
rule. The State argues that Dunning’s statement qualifies as an excited utterance


 or
a present sense impression


 and thus is excepted from the rule barring hearsay.
Alternatively, the State argues that the admission of the statement did not harm
appellant because the evidence establishing appellant’s guilt was overwhelming.
          A “present sense impression” is defined as “[a] statement describing or
explaining an event or condition made while the declarant was perceiving the event
or condition, or immediately thereafter.” Tex. R. Evid. 803(1). The rationale for the
present sense impression exception is: (1) the statement is safe from any error from
the defect of memory of the declarant, and (2) there is little or no time for a calculated
misstatement. Rabbani v. State, 847 S.W.2d 555, 560 (Tex. Crim. App. 1992); Kubin,
868 S.W.2d at 396. The record establishes the following chronology of events:
Alaaedin was speaking with the complainant when the phone went dead, Alaaedin
called for emergency assistance, Alaeedin called Dunning’s trailer, and Dunning
answered and explained what was happening. While the record does not reveal
exactly how many minutes passed from the time the phone went dead to the time
Alaaedin called back and spoke with Dunning to determine what was happening, the
record does establish that Alaaedin got to Dunning’s trailer approximately twenty
minutes after the phone went dead. The record further establishes that after speaking
with Dunning on the telephone, and before getting to Dunning’s trailer, Alaaedin had
a flat tire and had to find another friend to take her to Dunning’s trailer. Furthermore,
Alaaedin testified that Dunning was describing what was happening “as he [was]
seeing it.” Thus, there was evidence sufficient to support the trial court’s finding that
Dunning made the statement at issue to Alaaedin while he was perceiving the events
or conditions, or immediately thereafter, and that the statements qualified as a present
sense impression under Rule 803(1). 
          Accordingly, we hold that the trial court did not abuse its discretion in
admitting Alaaedin’s testimony concerning Dunning’s statement.
          We overrule appellant’s third point of error.
 
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Justices Nuchia, Jennings, and Higley.
 
Do not publish. Tex. R. App. P. 47.2(b).