

# NUMBER 13-19-00271-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**FRANCISCO JAVIER ZAMARRIPA,**                               **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                      **Appellee.**

---

### On appeal from the 139th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Perkes
### Memorandum Opinion by Justice Longoria

Appellant Francisco Javier Zamarripa was convicted of aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021. By six issues that we treat as five, he argues that: (1) the evidence was legally insufficient to sustain his conviction; (2) the trial court erred by denying his motion for new trial; (3) he received

ineffective assistance of counsel; (4) a three-page report was erroneously included in the record, allowing the jury "to view hearsay evidence that was not admitted at trial"; and (5) the trial court erred by denying his motion for mistrial based on improper jury argument. We affirm.

## I. BACKGROUND

On February 14, 2018, eight-year-old S.G.[1] informed her school counselor that Zamarripa, her stepfather, "would get on top of her at night" and that there was blood in her private parts. On the same day, S.G. was administered a SANE examination by Rosa Aguirre, a SANE nurse. Aguirre testified concerning her conversation with S.G.:

> Patient states, "I told my teacher, I don't know her name and then three people came." She puts [up] three fingers. "They asked me what my private parts are and then they asked me what happened at my house. I told them my private parts were here." Points to mouth, points to female sexual organ, and points to her buttocks. "I told them when I was asleep, I felt pressure all over, and I felt a body and a lot of pressure on my body. It happened a long time ago, like, not yesterday but the other day, or the other day, but a while ago. It happened two times." Puts two fingers up. "When I'm asleep I feel bones on top of me and also skin." Touches her arm with her hand. "But I don't wake up because my eyes are stick [sic] together." Patient touches her eyes and holds them shut. "I feel pressure in my private part." Patient points to female sexual organ. "I don't know what it is when I'm asleep. I don't even know that is it. One time when I woke up, I had blood in half of my underwear and when I went to pee."

According to Aguirre, S.G.'s hymen had been torn, which was consistent with S.G. having been penetrated by a male organ or an object. Aguirre testified that no disease, infection, or other physical ailment could cause a torn hymen.

On April 10, 2018, Zamarripa was indicted for aggravated sexual assault of a child. *See id.* The indictment alleged that on or about January 30, 2018, Zamarripa caused the

---

[1] To protect the minor complainant's identity, we will refer to her using an alias. *See* TEX. R. APP. P. 9.8.

penetration of S.G.'s sexual organ by his sexual organ or by some unknown object. On March 28, 2019, jury trial began. S.G. was one of the witnesses to testify. Following trial, Zamarripa was found guilty of the sole count of aggravated sexual assault of a child. The jury assessed punishment at eighty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court pronounced sentence as assessed by the jury. This appeal ensued.

## II. Legal Sufficiency

In his first issue, Zamarripa argues that the evidence is legally insufficient to sustain his conviction.

### A. Standard of Review & Applicable Law

When reviewing the legal sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "The prosecution bears the burden of proving all elements of the offense charged, and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements." *Niles v. State*, 555 S.W.3d 562, 569 (Tex. Crim. App. 2018). The factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *See Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008); *Bargas v. State*, 252 S.W.3d 876, 887 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("The jury may choose to believe or disbelieve any portion of the witnesses' testimony."). We give great deference to the trier of fact and assume the factfinder resolved all conflicts in the

3

evidence in favor of the verdict. *See Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We will uphold the verdict unless the factfinder "must have had reasonable doubt as to any essential element." *Id*. A reviewing court cannot overturn a conviction simply because it disagrees with the jury's verdict. *See Bargas*, 252 S.W.3d at 887.

"Courts give wide latitude to testimony given by child victims of sexual abuse." *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). The child complainant's description of the abuse need not be precise. *See id.* This rule "reflect[s] the important public policy that we cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults." *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc). The testimony of a child victim alone, uncorroborated by medical or physical evidence, is sufficient to support a conviction of aggravated sexual assault of a child. TEX. CODE CRIM. PROC. ANN. art. 38.07; *see Gonzalez*, 522 S.W.3d at 57.

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge and as authorized in the indictment. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc). Such a charge in this case would state that a person commits aggravated sexual assault of a child if the actor intentionally or knowingly penetrated the sexual organ of a child under the age of fourteen. TEX. PENAL CODE ANN. § 22.021(a)(2)(B).

## B. Analysis

Zamarripa raises several arguments related to the sufficiency of the evidence. He first complains that "[d]ue to the lack of answers for a clear record, many of the key elements of the offense have not been established." Zamarripa is referring to the fact that

many of S.G.'s responses are recorded as "uh huh," "huh uh," or simply "(nods head)." However, the prosecutor clarified during trial, "Just for the record, Judge, when she was nodding, it's a 'yes,' for the record." Zamarripa did not object to this representation. To the contrary, Zamarripa's counsel immediately responded with, "I'm going to use that," indicating his assent to S.G.'s use of nodding. The jury was in a position to witness S.G.'s responses, weigh her credibility, and determine the meaning of her nods and responses. *See Bartlett*, 270 S.W.3d at 150. Furthermore, given courts' leniency with the testimony of child complainants in sexual assault cases, we find nothing inadequate with the form of S.G.'s responses or the way they are represented in the record. *See Gonzalez*, 267 S.W.3d at 332.

As to the actual elements of the offense, Zamarripa asserts that due to inconsistent testimony, a rational trier of fact could not have found the essential elements beyond a reasonable doubt. First, Zamarripa complains that even though S.G. positively identified Zamarripa as the offender at trial, she also admitted that she never actually saw Zamarripa on top of her. Though S.G. felt "bones on top of me and also skin," she did not physically see the perpetrator because it was at night and her eyes were closed. However, testimony adduced at trial established that only five individuals lived in S.G.'s home: S.G., her mother, Zamarripa, a seven-year-old boy, and a two-year-old boy. S.G. testified that the "pressure" from the perpetrator being on top of her was enough to make her sore the next morning. Given the testimony concerning the people who live with S.G. and the great weight S.G. felt pressing on her during the night, a rational jury could have found beyond a reasonable doubt that S.G. was capable of identifying Zamarripa without necessarily seeing him.

5

Zamarripa also complains that there is insufficient evidence as to show penetration of S.G.'s sexual organ by Zamarripa's sexual organ or an unknown object. Zamarripa points to the fact that S.G. never mentioned that he removed her underwear or his own pants. Also, according to Zamarripa, S.G. never testified as to actually being penetrated or seeing Zamarripa's privates. However, there was testimony that S.G. had blood in her underwear and that her hymen was torn. Additionally, S.G. gave the following testimony concerning penetration when questioned by Zamarripa's counsel:

[Counsel]: Okay, and he's never taken your clothes off, correct?

[S.G.]: Uh-huh. (Nods head).

[Counsel]: Okay. And it's never—never been in your cookie[2], right?

[S.G.]: Hmm?

[Counsel]: His private parts has [sic] never been in your cookie, right?

[S.G.]: Oh, it has.

[Counsel]: It has?

[S.G.]: The night—the night it happened.

This testimony was alone sufficient to establish that penetration occurred. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Gonzalez*, 522 S.W.3d at 57. And even though S.G. did not testify that she saw Zamarripa's privates or that he pulled down her pants or underwear, the jury was still free to believe S.G.'s testimony that Zamarripa had penetrated her sexual organ. *See Bargas*, 252 S.W.3d at 887.

Zamarripa additionally asserts that the State failed to prove beyond a reasonable doubt that the offense was committed prior to the presentment of the indictment.

---

[2] S.G. referred to her privates as her "cookie."

6

According to Zamarripa, the State failed in this burden due to the "complete lack of a timeline." However, the record established that on February 14, 2018, S.G. made her first outcry statement, informing Aguirre that the offense did not occur within the last few days, but rather a "while ago." *See Villalon*, 791 S.W.2d at 134; *Gonzalez*, 267 S.W.3d at 332. On April 10, 2018, the indictment was presented, which alleged that the offense occurred on or about January 30, 2018. Thus, even though S.G. did not testify as to specific dates, the evidence presented at trial shows that the offense was committed before April 10, 2018. The jury could have found beyond a reasonable doubt that the offense was committed prior to the presentment of the indictment.

Lastly, Zamarripa also argues that the evidence was inconsistent, and therefore insufficient, regarding the location of the offense. On one occasion at trial, S.G. testified that the alleged offense occurred in the "other house." Zamarripa argues that the State thus failed to prove that the offense even occurred in Hidalgo County because the "other house" could have been anywhere. However, S.G.'s mother testified that they had lived within Hidalgo County for at least the two years prior to trial. The trial began in early 2019, and the offense purportedly occurred in early 2018. We assume the jury resolved any apparent conflicts in favor of the verdict. *See Laster*, 275 S.W.3d at 517. A rational jury could have concluded beyond a reasonable doubt that the offense occurred in Hidalgo County.

In summary, we do not find anything so illogical or inconsistent with S.G.'s testimony as to cause a rational jury to necessarily have reasonable doubts about her testimony. *See Laster*, 275 S.W.3d at 517. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the

7

essential elements of aggravated sexual assault of a child beyond a reasonable doubt. *See Clayton*, 235 S.W.3d at 778. We overrule Zamarripa's first issue.

### III. MOTION FOR NEW TRIAL

In his second issue, Zamarripa argues that the trial court erred by failing to grant his motion for new trial based on prosecutorial misconduct related to the State's failure to hand over a forensic report.

### A. Standard of Review & Applicable Law

We review a trial court's denial of a motion for new trial for an abuse of discretion. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). The test for abuse of discretion is "whether the trial court acted without reference to any guiding rules or principles." *Howell v. State*, 175 S.W.3d 786, 792 (Tex. Crim. App. 2005).

Pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), a defendant's due process rights are violated when the State withholds evidence that is favorable to a defendant.

> A defendant must show the following requirements to establish a *Brady* violation: (1) the State suppressed evidence; (2) the suppressed evidence is favorable to the defendant; and (3) the suppressed evidence is material. Favorable evidence for these purposes is any evidence that, if disclosed and used effectively, may make the difference between conviction and acquittal. Evidence is material for *Brady* purposes only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is one that is sufficient to undermine confidence in the outcome.

*Fears v. State*, 479 S.W.3d 315, 327 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd) (internal citations omitted). Although we defer to the underlying factual findings made by the trial court in its decision, we review de novo the materiality prong of a *Brady* claim. *See Ex parte Weinstein*, 421 S.W.3d 656, 664 n.17 (Tex. Crim. App. 2014).

8

**B. Analysis**

Zamarripa argues that, even though he requested it before trial, the State never gave him the forensic biology laboratory report that was generated on February 16, 2019. This report contained the results of the rape kit administered to S.G. and indicated that no semen was located on or in S.G. The prosecutor testified that the rape kit had been processed by the Department of Public Safety (DPS) and that DPS was supposed to e-mail the test results to the Hidalgo County Sheriff's Department. However, according to the prosecutor, for some unknown reason, the test results were not delivered to the District Attorney before Zamarripa's trial began. Thus, the report was never entered into evidence at trial. Zamarripa filed a motion for new trial partially on these grounds, which the trial court denied.

Zamarripa argues that the trial court should have granted a new trial based on the State's failure to deliver this report. Assuming without deciding that the State suppressed the report and that the report is favorable to Zamarripa, Zamarripa has not demonstrated a reasonable probability that the result of the proceeding would have been different had the State delivered the report. *See Fears*, 479 S.W.3d at 327. The record never indicated, and the State never alleged, that Zamarripa ejaculated on or in S.G. Aguirre also testified that even if Zamarripa had ejaculated, the chance of detecting semen on or in S.G. was effectively zero because more than ninety-six hours had passed between the date of the offense and the SANE examination. In other words, given the testimony adduced at trial and the lapse of time between the offense and the examination, a test result of "no semen detected" was to be expected and would not have significantly harmed the State's case. Thus, there is not a reasonable probability that the result of the proceeding would have

9

been different had the State delivered the forensic report to Zamarripa as required. *See id.* We overrule Zamarripa's second issue.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, Zamarripa argues that he received ineffective assistance of counsel. More specifically, he argues that there is no reasonable justification for why his trial counsel failed to ask for a pre-trial continuance when the State failed to deliver the forensic report to Zamarripa.

## A. Applicable Law

For a claim of ineffective assistance of counsel to be sustained, an appellant must satisfy the two-prong test set forth under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, an appellant must show by a preponderance of the evidence that counsel's performance fell below an objective standard of reasonableness and prevailing professional norms. *Id*.; *Chapa v. State*, 407 S.W.3d 428, 431 (Tex. App.— Houston [14th Dist.] 2013, no pet.). To evaluate the effectiveness of counsel's performance, we look at the totality of the representation. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Any claim for ineffectiveness of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See Thompson*, 9 S.W.3d at 814. If the record is silent on the motivation behind counsel's tactical decisions, then an appellant usually cannot overcome the strong presumption that counsel's representation was reasonable. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc). Because "the record is generally underdeveloped," direct appeal is usually an inadequate

10

vehicle for claims of ineffective assistance of counsel. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Additionally, courts are hesitant to declare a counsel's performance as deficient until counsel has been afforded an opportunity to explain their reasoning behind their performance. *See id*. For that reason, "we commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

Under the second prong, an appellant must show that counsel's performance prejudiced the defense such that there was a reasonable probability that, but for counsel's unprofessional errors, the outcome of the trial would have been different. *See Strickland*, 466 U.S. at 687.

**B. Analysis**

Zamarripa claims that his trial counsel was ineffective because he failed to ask for a continuance upon the State's failure to deliver the report. However, Zamarripa's motion for a new trial did not allege ineffective assistance of counsel. Thus, his trial counsel was not given an opportunity to explain any reasoning behind his conduct. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). We assume a strategic motive if any can be imagined. *See Andrews*, 159 S.W.3d at 101.

The record reflects that Zamarripa's counsel repeatedly sought to undermine the State's case by attacking the competence of the investigators concerning the processing and tracking of the rape kit. It is possible that Zamarripa's trial counsel did not seek a continuance so that he could highlight and specifically attack the State's lack of physical evidence linking Zamarripa to the offense. *See Hicks v. State*, 901 S.W.2d 614, 619 (Tex.

11

App.—San Antonio 1995, pet. ref'd) (observing that in a sexual assault case failure to pursue forensic testing "can be viewed as sound trial strategy" when the defendant wishes to attack the State's failure to produce physical evidence). Thus, Zamarripa fails on the first prong. *See Strickland*, 466 U.S. at 687.

Furthermore, Zamarripa fails on the second prong, as well, because there is not a reasonable probably that the result would have been different even if Zamarripa's counsel had sought a continuance. As discussed above, the report would have merely shown that no semen was detected. But the State did not need to prove that Zamarripa ejaculated. And a result of "no semen" was the expected result given the amount of time that had elapsed between the offense and the date the kit was administered. Therefore, we conclude that Zamarripa was unable to establish that his counsel's performance was deficient and that he was prejudiced due to his counsel's failure to seek a continuance. *See Strickland*, 466 U.S. at 687. We overrule his third issue.

### V. ADMISSION OF EVIDENCE

In his fourth issue, Zamarripa argues that the jury was "able to view hearsay evidence which was not admitted at trial."

Zamarripa asserts that the jury trial exhibit record contained a three-page "Hidalgo County Sheriff's Department Criminal Investigation Division Detailed Report." Zamarripa complains that, even though this report was never admitted into evidence, the report was accidentally placed in the jury exhibit record. According to Zamarripa, the report "offers many details outside of the record and if the jury was able to review such document during deliberations, then they violated their oath." However, before the exhibit was given to the jury, Zamarripa was given an opportunity to review the exhibit record. Upon inspecting

12

the exhibit record, Zamarripa raised no objections. *See* TEX. R. APP. P. 33.1; TEX. R. EVID. 103. Additionally, Zamarripa has not pointed to any information in the three-page report that was not already before the jury through other sources. A party waives an objection to the admission of evidence "when other such evidence was received without objection, either before or after the complained-of ruling." *Leday v. State,* 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *see Reckart v. State*, 323 S.W.3d 588, 596 (Tex. App.—Corpus Christi—Edinburg 2010, pet. ref'd). Therefore, nothing has been preserved for our review and any alleged error is waived. *See* TEX. R. APP. P. 33.1; TEX. R. EVID. 103. We overrule Zamarripa's fourth issue.

### VI. MOTION FOR MISTRIAL

In his fifth and final issue, Zamarripa argues that the trial court erred by failing to grant a mistrial based on improper jury argument.

### A. Standard of Review & Applicable Law

We review the denial of a motion for a mistrial for an abuse of discretion, meaning that we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *See Archie v. State*, 221 S.W.3d 695, 699–700 (Tex. Crim. App. 2007).

"Proper jury argument includes four areas: (1) summation of the evidence presented at trial, (2) reasonable deduction drawn from that evidence, (3) answer to the opposing counsel's argument, or (4) a plea for law enforcement." *Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000). The State may properly comment on a defendant's failure to produce evidence, as long as the remarks do not fault the defendant for failing to testify. *See id*.; *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995); *Orellana v. State*, 381 S.W.3d 645, 656 (Tex. App.—San Antonio 2012, pet. ref'd)

13

(observing that it does not inappropriately shift the burden of proof when the State comments on the defendant's failure to present favorable evidence).

When the State makes improper arguments, it is error to deny a mistrial only if the argument is "extreme or manifestly improper." *See Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).

## B. Analysis

During closing arguments, the following conversation transpired:

[State]: And please—this is why I have been losing sleep in this case—please take [S.G.'s] testimony. Don't let this man walk. What's going to happen—ask yourself what's going to happen if he does? Which house will he be in when he walks? Was it—will it be the house that he bought with [S.G.'s mother]? Will he be back with her?

[Zamarripa]: I'm going to object. That's inappropriate argument, Your Honor.

[Trial Court]: Sustained.

[Zamarripa]: I'm going to ask the Court to instruct the jury to disregard those statements from the prosecutor.

[Trial Court]: All right. Disregard the remarks from the prosecutor.

[Zamarripa]: And I'm moving for a mistrial, Judge.

[Trial Court]: Denied.

We presume that jurors follow the trial court's instructions as presented. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). The trial court sustained Zamarripa's objections and instructed the jury to disregard the prosecutor's statements. Zamarripa has failed to overcome the presumption that the trial court's instructions cured any potential error. *See id.* Additionally, this is not one of those rare cases where the State's remarks were so manifestly improper as to indicate that they were "calculated to

14

injuriously affect the rights of the [accused]." *Hawkins v. State*, 135 S.W.3d 72, 81 (Tex. Crim. App. 2004) (en banc). We conclude that the State's comments to the jury were not extremely or manifestly improper. *See Brown*, 270 S.W.3d at 570. Therefore, the trial court did not abuse its discretion by denying Zamarripa's motion for mistrial. *See Archie*, 221 S.W.3d at 699–700. We overrule Zamarripa's fifth issue.

## VII. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of December, 2020.

15